STATE OF NORTH CAROLINA v. DANNY McVAY
— *AND* —
STATE OF NORTH CAROLINA v. WOODROW SIMMONS

No. 66

(Filed 16 December 1970)

1. **Criminal Law § 92— consolidation for trial of robbery indictments against two defendants**

    The trial court did not abuse its discretion in consolidating for trial four indictments charging each of the two defendants with the armed robberies of a husband and his wife, the crimes having allegedly occurred at the same time and place.

2. **Constitutional Law § 32; Criminal Law § 66— in-custody photographs — subsequent photographic identification while defendants at liberty — right to counsel**

    Where defendants were released without charge after they had been interrogated about a murder and photographed, and were at liberty when such photographs were exhibited to and identified by an armed robbery victim as photographs of the men who robbed him and his wife, there exists a unanimity of opinion that defendants' Sixth Amendments rights were not violated by the absence of counsel when the photographic identifications were made.

State v. McVay and State v. Simmons

3. **Criminal Law § 66— admissibility of in-court identification — prior photographic identification — sufficiency of evidence to support court's findings**

In this armed robbery prosecution wherein defendants had previously been identified by the male victim from photographs taken of them at the police station during the investigation of a murder for which defendants were not charged, the trial court did not err in the admission, over defendants' objections, of the in-court identification by the male victim of one defendant as the man who robbed him and of the other defendant as the man who robbed his wife, where there was ample competent evidence on *voir dire* to support the court's finding that each defendant voluntarily went with officers to the police station in connection with the murder case, and there was competent, clear and convincing evidence to support the court's finding that the in-court identification of each defendant was based on what the witness saw at the time of the robbery and did not result from any photographic or pretrial identification procedures suggestive and conducive to mistaken identification.

4. **Criminal Law § 66— in-court identification — necessity for voir dire**

When the admissibility of in-court identification testimony is challenged on the ground it is tainted by an out-of-court identification made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility; when the facts so found are supported by competent evidence, they are conclusive on appellate courts.

5. **Criminal Law § 113— joint trial of two defendants — instructions — separate consideration of guilt or innocence of each defendant**

In this joint trial of two defendants for armed robbery, the trial court sufficiently instructed the jury that it should separately consider the guilt or innocence of each defendant and that it could find one defendant not guilty even though it found the other defendant guilty.

Justice Moore did not participate in the consideration or decision of this case.

APPEAL by each defendant from *Anglin, J.,* June 22, 1970 Schedule "C" Criminal Session of MECKLENBURG Superior Court, transferred for initial appellate review by the Supreme Court under an order entered pursuant to G.S. 7A-31 (b) (4).

In separate indictments, each defendant was charged (1) with the armed robbery of "Mrs. Luceille *(sic)* Cain King," and (2) with the armed robbery of Elbert Carroll King.

Defendants, who had been adjudged indigents, were represented by court-appointed counsel, defendant Danny Lewis McVay (McVay) by W. Herbert Brown, Esq., and defendant Woodrow Simmons (Simmons) by James J. Caldwell, Esq.

On motion of the State, and over objection by each defendant, the four cases were consolidated for trial.

The State offered evidence tending to show the facts narrated in the following two paragraphs.

Elbert C. King and Lucille C. King, husband and wife, were robbed at gunpoint on March 4, 1970, about 9:00 p.m. The robberies occurred in a well-lighted parking lot at the intersection of North Tryon and East Seventh Streets, Charlotte, N. C. The Kings had returned to their parked car, a two-door Mercury. Mrs. King, the driver, had parked the car about 7:00 p.m. in one of the spaces alongside the brick wall (side) of the First Union Branch Bank building. It was headed towards the building and was some 15-25 feet from North Tryon Street. Other cars were parked in the spaces between the King car and the North Tryon Street sidewalk.

In returning to their car, Mrs. King went with Mr. King to the passenger's side of the car. After unlocking the door for Mr. King, Mrs. King walked to and around the rear of the car and was standing there on the driver's side with the key "to unlock the door on the left-hand side." As King stood on the passenger's side, between the open door and the hood, Simmons came up behind King and "put his gun on (his) neck back of (his) ear." After threatening to blow King's brains out if King did not give him his money, Simmons took from King his billfold and contents, which consisted of credit cards, charge account cards and about six or seven dollars cash. About the same time, McVay came up behind Mrs. King. He grabbed her around the neck with his left arm, placed his left hand over her mouth and pointed a gun "at (her) face." After telling her it was a stickup and that he would kill her if she hollered, McVay opened Mrs. King's handbag and got her billfold and contents, which consisted of twenty-nine dollars cash, a book of 6¢ stamps, credit cards, driver's license, car registration, social security card, hospital insurance identification, pictures of relatives, and other items.

The testimony of the victims is the only evidence as to *what* occurred on the occasion of the robberies. Mr. King testified in detail as to the circumstances under which he was robbed and as to the circumstances under which Mrs. King was robbed. Mrs. King testified in detail as to the circumstances under which she was robbed. With reference to the *robbery* of Mr. King, Mrs. King testified only that while she was

being robbed she saw a different person attack Mr. King. She testified the two persons left the parking lot and ran behind the building about the same time and headed towards the railroad track.

Mr. King's in-court testimony at the trial was positive and unequivocal. He identified McVay as the man who robbed Mrs. King and identified Simmons as the man who had robbed him (King). The *admitted* testimony of Mrs. King concerning the identity of the man who had robbed her was to the effect that he "was tall and light skinned" and that the person who attacked Mr. King was "a low, dark-skinned boy." The court, on objection by McVay, excluded other proffered testimony of Mrs. King relating to the identity of the person who had robbed her.

At the conclusion of the State's evidence, each defendant moved that the actions against him be dismissed and for judgments as in case of nonsuit. McVay's motion was allowed in respect of the indictment charging him with the armed robbery of King. His motion was denied in respect of the indictment charging him with the armed robbery of Mrs. King. McVay excepted to this ruling. Simmons' motion was allowed in respect of the indictment charging him with the armed robbery of Mrs. King. His motion was denied in respect of the indictment charging him with the armed robbery of King. Simmons excepted to this ruling. After these rulings, each defendant testified and offered evidence.

Each defendant denied he had committed the alleged crimes and denied he had been with the other defendant at any time on March 4, 1970. Too, each defendant testified and offered evidence tending to show he was at an entirely different place at the time the Kings testified they were robbed.

At the conclusion of all the evidence, McVay moved to dismiss and for judgment as in case of nonsuit in respect of the indictment charging him with the armed robbery of Mrs. King, the felony for which he was then on trial; and Simmons moved to dismiss and for judgment as in case of nonsuit in respect of the indictment charging him with the armed robbery of King, the felony for which he was then on trial. Each of these motions was overruled and each defendant excepted.

As to each defendant, in respect of the felony for which he was then on trial, the court submitted for jury determination

whether that defendant was guilty of armed robbery as charged, or guilty of common-law robbery, or not guilty.

In respect of the indictment charging him with the armed robbery of Mrs. King, McVay was found guilty of armed robbery as charged. In respect of the indictment charging him with the armed robbery of King, Simmons was found guilty of armed robbery as charged. On these verdicts, the court, as to each defendant, pronounced judgment which imposed a prison sentence of not less than fifteen nor more than twenty years.

Each defendant gave notice of appeal, and an order was entered that each defendant be represented on appeal by his trial counsel and that the State pay all costs necessary to perfect the appeal.

*Attorney General Morgan and Assistant Attorney General Rich for the State.*

*W. Herbert Brown, Jr., for defendant-appellant McVay.*

*James J. Caldwell for defendant-appellant Simmons.*

BOBBITT, Chief Justice.

[1] Defendants excepted to and assign as error the consolidation for trial of the four indictments. This assignment is without merit. The State's motion for consolidation was addressed to the sound discretion of the presiding judge. *State v. Yoes,* 271 N.C. 616, 641, 157 S.E. 2d 386, 406, and cases cited. There is no basis for a contention that he abused his discretion. Ordinarily, consolidation is appropriate when the offenses charged are of the same class and are so connected in time and place that evidence at the trial upon one of the indictments would be competent and admissible at the trial on the other(s). *State v. Hamilton,* 264 N.C. 277, 283, 141 S.E. 2d 506, 511, and cases cited; *State v. Overman,* 269 N.C. 453, 466, 153 S.E. 2d 44, 56, and cases cited. *State v. Dyer,* 239 N.C. 713, 80 S.E. 2d 269, cited by defendants, involved an entirely different factual situation. In separate indictments, each of two men was charged with having received stolen goods, knowing them to have been stolen, the property of Colonial Stores, Inc. The alleged crimes were unrelated. They occurred at different times and places and under different circumstances. Neither defendant was present or in any way involved when the crime charged against the other was committed.

Each defendant excepted to and assigned as error the admission, over his objection, of the in-court identification by King of McVay as the man who robbed Mrs. King and of Simmons as the man who robbed him (King). When King's identification testimony was proffered, each defendant objected and the jury was excused. In the absence of the jury, a *voir dire* hearing was conducted. The evidence offered consisted of the testimony of King and of W. O. Holmberg and of Dale M. Travis. Holmberg and Travis are members of the Criminal Investigation Bureau of the Charlotte Police Department.

At the conclusion of the *voir dire* hearing, Judge Anglin made the following findings of fact:

### "FINDINGS OF FACT

"That the parking lot was well lighted — about like daylight; that during the robbery the witness King was part of the time face to face with the man who took his wallet; that the witness King in court pointed to the defendant Simmons as the one who robbed him; that the witness King got a good look at the other man while his wife was being robbed; that he was on one side of the car and they were on the other; that he was looking over the hood of the car; that in court the witness King pointed to the defendant McVay as the one who robbed his wife; that the witness King was positive as to his in-court identification of each defendant based on what he saw at the time of the robbery and on nothing more.

"That three or four days after the robbery officers showed photographs of six to ten different men to the witness King at his home; that he did not recognize any photograph as being of the man who robbed him or of the man who robbed his wife; that later a group of fifteen to twenty photographs were shown by officers to him at his home and he picked out two which he was almost positive were photographs of the men who robbed him and his wife; that they were photographs of the defendant Simmons and the defendant McVay.

"That on 20 April 1970 at the preliminary hearing in these cases the witness Elbert King saw two men and that he 'knew' they were the ones who robbed him and his wife; that the photographs had nothing to do with his recognizing the men; that the defendants McVay and Simmons were the defendants at the preliminary hearing and each defendant had counsel present representing him and participating in the hearing.

"That on or about 6 or 7 March, 1970, at the instance of officers the defendant McVay and the defendant Simmons each voluntarily went with the officers to the criminal investigation center for interrogation with respect to an investigation of the Alexander murder case; that neither McVay nor Simmons was under arrest while at the center; that during the time the defendants were at the center a photograph was taken of each defendant separately, no photograph being taken of them together; that those single photographs were in the second group shown to the witness King at his home.

"That from clear and convincing evidence the in-court identification of the defendant McVay and the in-court identification of the defendant Simmons by the witness Elbert King is each of independent origin, based solely on what he saw at the time of the robbery and does not result from any out-of-court confrontation or from any photograph or from any pretrial identification procedures suggestive and conducive to mistaken identification."

Upon these findings of fact, the court ruled the in-court identifications by King of McVay and of Simmons were competent and admissible in evidence. Each defendant excepted to and assigned as error the court's "findings of fact" and rulings "relating to . . . King's in-court identification of . . . McVay and of . . . Simmons on *voir dire*." No exception was addressed to any specific finding of fact. Nor does either defendant assert there is no competent evidence to support the court's findings of fact.

It seems appropriate to call attention to certain evidential facts.

[2] Prior to the preliminary hearing, there was no corporeal lineup or confrontation. The photographs of McVay and Simmons, which were exhibited to and identified by King on March 21st or March 22nd, had been taken on March 6th or March 7th at the Criminal Investigation Bureau in connection with the investigation of the Alexander murder case. McVay and Simmons were *released* after they had been interrogated and photographed on March 6th or March 7th. They were at liberty on March 21st or March 22nd when King identified these photographs ("was almost positive") as photographs of the men who had robbed him and his wife. There exists a unanimity of opinion to the effect defendants' Sixth Amendment rights are not violated by

the absence of counsel when photographic identifications are made under such circumstances. *State v. Accor,* 277 N.C. 65, 80, 175 S.E. 2d 583, 592-593, and cases there cited. Defendants' counsel do not contend otherwise.

[3]  The Alexander murder occurred on March 6th or March 7th. As indicated, neither defendant testified at the *voir dire* hearing. Although each testified at trial, neither testified that his visit to the Criminal Investigation Bureau and his interrogation by the officers and the taking of his photographs during the investigation of the Alexander murder case was otherwise than voluntary. Suffice to say, there was ample competent evidence to support the court's positive finding that each defendant voluntarily went with the officers to the Criminal Investigation Bureau in connection with the Alexander murder case.  Moreover, there was competent, clear and convincing evidence to support the court's positive finding that "the in-court identification of the defendant McVay and the in-court identification of the defendant Simmons by the witness Elbert King (was) each of independent origin, based solely on what he saw at the time of the robbery and (did) not result from any out-of-court confrontation or from any photograph or from any pretrial identification procedures suggestive and conducive to mistaken identification."

[4]  "In the establishment of a factual background by which to determine whether a confession meets the tests of admissibility, the trial court must make the findings of fact.  When the facts so found are supported by competent evidence, they are conclusive on appellate courts, both State and Federal." *State v. Barnes,* 264 N.C. 517, 521, 142 S.E. 2d 344, 346-347, and cases cited. When the admissibility of in-court identification testimony is challenged on the ground it is tainted by out-of-court identification(s) made under constitutionally impermissible circumstances, the trial judge must make findings as to the background facts to determine whether the proffered testimony meets the tests of admissibility.  When the facts so found are supported by competent evidence, they are conclusive on appellate courts. See *State v. Blackwell,* 276 N.C. 714, 721, 174 S.E. 2d 534, 539.

It is noted that the State did not offer in evidence either the photograph of McVay or the photograph of Simmons which King had identified on March 21st or March 22nd. In this respect, *inter alia,* this case is distinguishable from *Davis v. Mississippi,* 394 U.S. 721, 22 L.Ed. 2d 676, 89 S.Ct. 1394, and *State v. Accor,*

*supra.* The only evidence before the jury relating to the exhibition of photographs to King was elicited by counsel for defendants on cross-examination of King.

[3] Defendants have failed to show error in connection with the admission in evidence of King's in-court identification testimony. Since King's testimony was sufficient to require submission of each defendant's case to the jury, the assignments of error directed to the overruling of the motions to dismiss and for judgments as in case of nonsuit are without merit.

[5] Defendants excepted to and assign as error the asserted failure of the court "to instruct the jury of the possibility that it could find one defendant guilty and the other defendant not guilty." Neither defendant excepted to any particular portion of the charge as a basis for this assignment of error. Suffice to say, the charge contains no instruction comparable to that considered by this Court in *State v. Williford,* 275 N.C. 575, 169 S.E. 2d 851, the only decision cited by defendants. Here, Judge Anglin took up each indictment separately and explained in detail what the State had to prove in order to warrant a finding that the defendant named therein was guilty of armed robbery or of common-law robbery, and that if the jury failed to so find it would be their duty to return a verdict of not guilty as to the defendant in the indictment under consideration. There was no confusion in the instructions. On the contrary, each defendant's case was considered separately and each defendant's guilt or innocence was made to depend upon what he did and not on what somebody else may have done.

Defendants' remaining assignments of error are patently without merit and were properly abandoned by defendants' counsel.

For the reasons indicated, the verdicts and judgments will not be disturbed.

No error.

Justice MOORE did not participate in the consideration or decision of this case.