State v. Johnson

---

STATE OF NORTH CAROLINA v. WALTER EUGENE JOHNSON

No. 42

(Filed 14 January 1972)

1. Criminal Law § 66— in-court identification — pretrial view of defendant at victim's home

The evidence presented on voir dire supported the court's determination that a rape victim's in-court identification of defendant was of independent origin based on observations at the scene of the rape and was not tainted by her prior view of defendant when an officer brought defendant to her home, and that defendant knowingly, understandingly and voluntarily waived his right to an attorney before he was viewed by the victim.

2. Rape § 5— sufficiency of evidence

The State's evidence, including the victim's in-court identification of defendant, was sufficient to be submitted to the jury in this rape prosecution.

APPEAL by defendant from *Kivett, J.,* January 4, 1971, Criminal Session, FORSYTH Superior Court.

The defendant, Walter Eugene Johnson, was tried on a bill of indictment proper in form, charging the capital offense of

rape. The victim was Marcella Stroud, a female child under the age of twelve years. The offense was committed in Forsyth County on September 11, 1970.

The defendant's affidavit of indigency filed in court after his arrest disclosed that he is single, has $435 in cash, and is employed at a weekly salary of $90. The district judge found the defendant was financially able to employ counsel and denied his petition that counsel be assigned. On October 26, 1970, Judge Walter E. Johnston, Jr. found the defendant to be indigent and appointed W. Warren Sparrow attorney to represent him.

At the trial Marcella Stroud testified that just before five o'clock on the evening of September 11, 1970, as she was returning home from a store, a man she did not know grabbed her by the sweater, pushed and dragged her up a steep hill to a vacant house. He threatened her with an open knife, tied a necktie around her mouth, and forced her to lie down on some papers and by force had intercourse with her. " . . . (A)fter he heard somebody calling, . . . the man got up and zipped his pants up and then I got up. . . . Then he say wait little girl, and then he ran out before I did."

The witness further testified she went to the home of her aunt who discovered blood on her clothing. Her mother took her home and made inquiry as to what had happened. At first she said a boy was responsible. After further questioning she said her assailant was a man. She was afraid to tell on him because he had threatened to kill her.

When the officers came in response to a call, she described the man as being about forty years old with sideburns, a little thin moustache and an Afro-hairdo with cross parts on the top and back. He was wearing a green shirt.

Acting on the description given by the victim, the officers interviewed a number of persons in the vicinity of the assault. In consequence of the information they obtained, they went to the house of the defendant's sister with whom he lived. Officer McFadden interviewed the defendant whom he had known for many years. "I told him somebody was accusing him of having messed with a little kid. . . . I . . . read him . . . the Miranda warning." He signed the written waiver which concluded: "I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer

questions. . . . I understand and know what I am doing." He stated to the officer that he got off work around four o'clock, went to town and about four-thirty returned to the house where he lived and did not leave thereafter. When told of the charge against him, he said: " . . . I know what this is all about, . . . I don't want to call no lawyer. . . . I did not do anything and if you will bring the person down that has accused me of this, I will convince them of this." The officer thereafter took the defendant to the Stroud home where Marcella looked at him.

The defendant objected to the admission of any identifying evidence on the ground the identification was based on Marcella's view of the defendant who was then in police custody; and the identification on that account was tainted and inadmissible. The court in the absence of the jury conducted an inquiry reported on thirty-seven pages of the record. Based on the evidence developed, the court made findings of fact reported on six pages of the record. The court concluded: " . . . (T)he evidence is clear and convincing that the in-court identification of the defendant by Marcella Stroud is of independent origin based on observations made at the scene of the rape alleged in this case, and that the in-court identification of the defendant by Marcella Stroud isn't tainted by any other factors . . . . "

After the jury was recalled, Marcella identified the defendant saying: "That was the man."

The State offered Dr. Quivers, a medical expert, who testified that his vaginal examination disclosed " . . . (B)right and dark red blood. . . . That means that the child underwent some sort of trauma . . . damage to the vaginal mucosa. . . . "

At the close of the State's evidence the defendant lodged and the court overruled a motion to dismiss.

The defendant testified and offered witnesses in his defense. He stated that on September 11, 1970, he worked until four-thirty, went to several places in town, and got home at ten minutes until six o'clock and did not leave until the police came a day or two later. On cross-examination the defendant admitted that since 1950 he had been convicted in court four times for assault on a female, five times for assault with a deadly weapon, and one time for larceny. His convictions for public drunkenness and traffic violations were numerous.

The defendant's sister, with whom he lived, testified: " ... (I)t was about twenty-six minutes past six when Walter came home .... " James Pope testified that he and the defendant worked together, that they left work at four-thirty. They went to town, made some stops and he took Walter home. On cross-examination he admitted he had been convicted six times for assault on a woman and that he had been convicted of numerous other charges.

At the close of all the evidence the defendant renewed, and the court again overruled, his motion to dismiss.

After the arguments and the court's charge, the jury deliberated and returned in the court a verdict of guilty of rape with a recommendation the punishment be imprisonment for life in the State's prison. From a sentence of life imprisonment, as the jury's recommendation, the defendant appealed. A second addendum to the record discloses the verdict as returned by the jury.

*Robert Morgan, Attorney General by Thomas B. Wood, Assistant Attorney General for the State.*

*W. Warren Sparrow for defendant appellant.*

HIGGINS, Justice.

The defendant by brief and by oral argument, presents two questions for review: (1) Was the in-court identification of the defendant by the prosecuting witness tainted and rendered inadmissible by the prior identification while the defendant was in custody of the officers and without counsel? and (2) Was the evidence sufficient to survive the motion to dismiss and to sustain the guilty verdict? Neither question is a stranger to this Court.

The victim, Marcella Stroud, age 9, did not at first report the assault. Shortly after its commission her aunt and her mother discovered the evidence of assault, made inquiry, and were told a boy was responsible. When questioned further as to his identity, she admitted a man about forty years old dragged her from the street into a vacant house where he committed the act of rape. She did not at first make a truthful statement for fear of the defendant's threat to kill her. However, on further inquiry she gave her mother a detailed description of her

assailant and repeated the description to the police. She described her assailant as about forty years old with sideburns, a thin moustache and Afro-hairdo with two cross parts in the hair. He was wearing a green shirt and carried a knife which he opened and threatened to kill her. Although the defendant and the victim lived within the same section of Winston-Salem, neither knew the other.

Acting on the victim's description and other information developed by inquiry, the officers interrogated the defendant telling him he was suspected of having "messed with a little kid." He was given due warning of his rights and signed a written waiver of counsel and consented to the interrogation.

[1] At the trial when the victim was asked to identify her assailant the defendant objected and requested a hearing in the absence of the jury. The evidence developed on the voir dire fully sustained the findings of fact made by the court and supported the court's conclusion, " . . . (T)he evidence is clear and convincing that the in-court identification of the defendant by Marcella Stroud is of independent origin based on observations made at the scene of the rape alleged in this case, and that the in-court identification of the defendant by Marcella Stroud isn't tainted by any other factors that were so impressively suggestive so as to give rise to a substantial likelihood of . . . misidentification; and that the defendant knowingly, understandingly, voluntarily, and intelligently waived his constitutional right to have an attorney present before . . . being viewed by others, including Marcella Stroud . . . . " The defendant did not offer any evidence on the voir dire, hence the evidence was not in conflict.

The trial court's findings are amply supported by that evidence, hence binding on the courts. *State v. Lynch,* 279 N.C. 1, 181 S.E. 2d 561; *State v. Cooke,* 278 N.C. 288, 179 S.E. 2d 365; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344. The objection to Marcella's in-court identification of the defendant was properly overruled. *State v. McNeil,* 277 N.C. 162, 176 S.E. 2d 732; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *Stovall v. Denno,* 388 U.S. 293, 18 L.Ed. 2d 1199.

[2] The State's evidence of guilt and the defendant's denial raised issues of fact to be decided by the jury. *State v. McKnight,*

279 N.C. 148, 181 S.E. 2d 415; *State v. Vestal,* 278 N.C. 561, 180 S.E. 2d 755; *State v. Davis,* 246 N.C. 73, 97 S.E. 2d 444; *State v. Stephens,* 244 N.C. 380, 93 S.E. 2d 431.

The State having offered substantial evidence of every material element of the crime charged in the indictment, the jury finding of guilt is conclusive. In the trial, verdict, and judgment we find

No error.