STATE OF NORTH CAROLINA v. THOMAS PAUL RUSSELL

No. 7312SC277

(Filed 12 December 1973)

1. **Criminal Law § 66— in-court identification — photographic identification — viewing defendant in courthouse hall** ·

   The evidence on *voir dire* supported the trial court's determination that a robbery victim's in-court identification was of independent origin and not tainted by a photographic identification at which the victim was shown three photographs and told that the photographs were of persons then in custody for similar offenses or by seeing the defendant in the courthouse accompanied by a police officer on the morning of the trial.

2. **Criminal Law § 75— admissibility of confession**

   The evidence on *voir dire* supported the trial court's determination that defendant's written confession was made freely and voluntarily after he had been given the *Miranda* warnings and had knowingly and intelligently executed a written waiver of counsel.

APPEAL by defendant from *James, Judge,* 6 November 1972 Special Criminal Session of Superior Court held in CUMBERLAND County.

Defendant was tried under a bill of indictment, proper in form, charging him with armed robbery. He pled not guilty, was found guilty as charged, and from judgment imposing a prison sentence, appealed.

*Attorney General Robert Morgan by Associate Attorney Howard A. Kramer for the State.*

*Thomas H. Williams for defendant appellant.*

PARKER, Judge.

[1]   Defendant brings forward two assignments of error. The first concerns the trial court's refusal, at the close of the voir dire examination, to suppress prosecutrix Effie Tilley's in-court identification of defendant as one of the two men who, at approximately 1:00 a.m. on 28 December 1971, came into the motel operated by Mrs. Tilley and her husband and robbed them at gunpoint. Facts pertinent to the in-court identification are as follows: Mrs. Tilley and her husband managed the motel and lived in an apartment adjoining the motel's office. On the night of the robbery two men came into the motel office and asked for a room. One, later identified by Mrs. Tilley as the defendant, walked to the desk and filled out a registration card. After the men finished registering, Mrs. Tilley picked up the card, but one of them took it back, saying that he forgot something. One of the men then said, "Don't scream, it's a robbery." During the ensuing scuffle before the intruders fled with $35.00 in cash, both Mr. and Mrs. Tilley were struck by the defendant. At the voir dire hearing, Mrs. Tilley testified:

> "I am 57 years old. At the time of the robbery there was a bright light with three bulbs overhead and a bright light on at the desk. The room was well lighted. I was able to see the man who filled out the card very well. He was the [defendant]. At the time of the robbery he was in my presence twenty to thirty minutes. When the suspect was signing the registration card I was close enough to him to touch him. I was sitting at the desk and looking at him all this time. I did touch [him] later when I pulled him off my husband."

Several days after the robbery, officers came to the motel and showed Mrs. Tilley photographs of three black males, telling her that the photographs were of persons who were then in custody in Carthage for similar offenses. Mrs. Tilley picked out defendant's photograph as being a picture of one of the men who had robbed her. Following the robbery, Mrs. Tilley did not see defendant in person until the morning of the trial, 8 November 1972, when she saw him, accompanied by a uniformed officer, walking in the hall of the courthouse.

The trial court entered an order making findings of fact which in salient detail are as narrated above, and defendant does not challenge their accuracy. Rather, defendant takes exception to the court's ensuing conclusion that Mrs. Tilley's in-court identification of defendant was based on her observation at the time and scene of the robbery and was not tainted by viewing the photographs several days after the robbery or by seeing the defendant in the courthouse on the morning of the trial.

The record furnishes but meager support for defendant's contention that impermissibly suggestive procedures may have been employed by the officers when the photographs were exhibited to the witness and furnishes no support whatever for a contention that anything untoward occurred when she chanced to see defendant at the courthouse on the morning of the trial. However, if it be conceded, *arguendo,* that the possibility of misidentification might have been minimized by exhibiting to the witness a wider assortment of photographs and by withholding from her information that the pictures were of persons already in custody on charges of similar offenses, nevertheless, evidence in the record overwhelmingly supports the trial court's findings and conclusion that her in-court identification was of independent origin. The circumstances of the crime, its duration and commission in a well-lighted area, the opportunity which the prosecutrix had to observe the defendant for a substantial period while he stood immediately in front of her, his lack of any disguise, all support the witness's testimony and the trial court's findings and conclusion that her in-court identification "was based on her observations at the time and scene of the robbery and was not influenced or tainted by any other identification acts or procedures prior to the calling of the case for trial." We hold that defendant's motion to suppress the in-court identification was properly denied and the evidence was properly admitted.

[2] The second assignment of error challenges the admission into evidence, after voir dire examination, of defendant's written confession. Defendant argues that the evidence indicates that the statement was made after inadequate *Miranda* warnings given when the defendant's sensibilities had been numbed by three days of continuous interrogation. The record, however, does not support this reconstruction of the events surrounding the making of defendant's confession. The trial court found that on 3 January 1972, only a few days after the robbery, Detective

Poole of the Cumberland County Sheriff's Department was sent to the Moore County jail, where, reading from a card, he advised defendant of his constitutional rights. Defendant then signed both an acknowledgment of the same and a written waiver of counsel. At this time, defendant had been incarcerated for three days, was not under the influence of drugs or alcohol, and thereafter answered Poole's questions in a coherent and intelligent fashion. Poole wrote down defendant's answers and defendant signed the completed statement, in which he admitted his participation in the armed robbery of a man and a woman at a motel on the night of 27 December 1971.

Reviewing the record, we find these findings of fact clearly supported by competent evidence, and hence conclusive upon appeal. *State v. Morris,* 279 N.C. 477, 183 S.E. 2d 634; *State v. McVay and Simmons,* 277 N.C. 410, 177 S.E. 2d 874. We note especially that Detective Poole, according to his uncontradicted testimony at voir dire, read to defendant the essentials of the standard *Miranda* warnings. Furthermore, the possibility that Poole unfairly suggested or inaccurately copied the critical portions of defendant's confession is highly unlikely; while the confession and Mrs. Tilley's testimony were in no manner contradictory and in fact shared many critical specifics, Detective Poole had performed no investigatory work in the case prior to 3 January 1972 and was not otherwise familiar with the robbery at the time defendant's confession was made. The trial court's findings of fact fully support its conclusion that defendant "made a knowing, intelligent and conscious waiver and freely and voluntarily made the statement which he signed."

In the trial and judgment appealed from we find

No error.

Judges CAMPBELL and HEDRICK concur.