STATE OF NORTH CAROLINA v. JERRY MILTON CREWS AND DEBORAH LEIGH PARRISH

No. 47

(Filed 26 November 1974)

1. Criminal Law § 84— search and seizure — objection to evidence — duty to hold voir dire

   When the defendant objects to the admissibility of the State's evidence on the ground that it was obtained by unlawful search, it is the duty of the trial court, in the absence of the jury, to hear the evidence of the State and of the defendant regarding the lawfulness of the search and seizure and to make findings thereon.

2. Criminal Law § 84— voir dire on admissibility of seized evidence — burden of going forward

   The trial court did not err on *voir dire* in placing on defendants the burden of going forward on their motions to suppress evidence seized from their apartment where defendants and the State were each afforded equal opportunity to present their case to the trial judge on *voir dire* and the court correctly placed on the State the burden of proving the admissibility of the evidence, the order of offering testimony not being a factor in determining the fairness of a *voir dire* hearing.

3. Criminal Law § 84; Searches and Seizures § 1— amphetamines in plain view — seizure without warrant

   Where officers were legally in defendants' apartment to serve a capias on the male defendant, an officer saw on a closet shelf a clear, brown-tinted pint-size bottle with no labels containing several hundred multi-colored pills when the male defendant went to the closet to obtain his clothes, and the officer believed they were amphetamines because of the appearance of the pills and the bottle, the officer had reasonable grounds to believe that the bottle, which was in plain view, contained amphetamines and properly seized the bottle and pills without a warrant.

---

State v. Crews

---

4. **Searches and Seizures § 3— seizure of amphetamines without warrant — statement by one defendant — probable cause for warrant**

   The lawful seizure of a bottle containing amphetamines from defendants' apartment without a warrant, coupled with a question officers heard the female defendant ask the male defendant, "What about the others?", constituted probable cause for issuance of a warrant to search the apartment.

5. **Criminal Law § 146— constitutionality of statute — question not presented in trial court**

   Question of the constitutionality of the statute giving the State Board of Health authority to reschedule substances under the Controlled Substances Act, G.S. 90-88, was not before the Supreme Court where that question was not presented in the superior court or in the Court of Appeals.

   Chief Justice BOBBITT not sitting.

   Justice SHARP dissenting.

APPEAL by defendants from the decision of the Court of Appeals, reported 22 N.C. App. 171, 205 S.E. 2d 765 (1974), which found no error in the trial before *Wood, J.,* at the 27 August 1973 Session of FORSYTH Superior Court.

On indictments proper in form, defendants were tried and convicted of possession of amphetamines, a Schedule II substance the possession of which was then a felony under the North Carolina Controlled Substances Act. G.S. 90-86 *et seq.* (1971 Cumulative Supplement). From sentences imposed, defendants appealed to the Court of Appeals. From the decision of the Court of Appeals, they appeal to this Court, pursuant to G.S. 7A-30(1).

The State's evidence tends to show that at approximately 4 a.m. on 16 May 1973 Winston-Salem Police Officers Rogers and Spillman went to 1021 Sunset Drive, Apartment G, in Winston-Salem, to serve a capias on defendant Crews for failing to appear in court in a nonsupport case. Beverly Lee Wall, who was spending the night in the apartment's living room, answered the door. The officers asked for Crews, and she answered that he was in the back bedroom. The officers proceeded there and turned on the overhead light. The two defendants were in the bed. Miss Parrish was partially in a lying and sitting position with covers on. Crews had awakened and was lying nude in the same bed. The officers informed him that they had a capias for his arrest and that he was to come with them. He put on a pair of undershorts that was lying beside the bed and proceeded

into a walk-in closet to get outer clothing. Officer Spillman followed Crews to the closet and noticed a clear, brown-tinted bottle about five inches high and two to three inches in diameter located on the front of the shelf above the clothes that were hanging in the closet. The bottle had no writing or labels on it. It appeared to Officer Spillman to contain pills of various colors. Officer Spillman took Crews, and the bottle to the police station. The bottle was found to contain several hundred amphetamines. Police officers then procured a search warrant and returned to the apartment. There they found several thousand more amphetamines in a pasteboard box under the bed in which defendants had been sleeping.

Other facts pertinent to decision are set out in the opinion.

*Attorney General Robert Morgan by John R. B. Matthis, Assistant Attorney General, for the State.*

*McElwee, Hall & McElwee by John E. Hall for defendant appellants.*

MOORE, Justice.

[2] Defendants first contend that the trial court erred on *voir dire* in placing on them the burden of going forward on their motions to suppress evidence obtained by the police officers at defendants' apartment.

Shortly after the jury was impaneled, defense counsel made a motion to suppress the amphetamines as the fruit of an unlawful search. At that time the jury was excused and a *voir dire* examination of witnesses was conducted. Defendants first introduced evidence covering some 47 pages of the record, and the State introduced evidence covering some 33 pages. After all the testimony, the trial judge made findings and admitted the evidence.

In support of their contention, defendants cite *State v. McCloud,* 276 N.C. 518, 525, 173 S.E. 2d 753, 758 (1970), where it is stated: " . . . And one who seeks to justify a warrantless search has the burden of showing that the exigencies of the situation made search without a warrant imperative. [Citations omitted.]" Defendant confuses the "burden of proof" with the "burden of going forward." The trial court in the present case, in compliance with *McCloud,* clearly and correctly stated that the State has the burden of *proving* the admissibility of

evidence, and properly differentiated this burden from the burden of *going forward,* when it said: "[T]he Court is considering that regardless of the way the evidence is put on, . . . the burden of proving is on the State at all times. . . . "

[1] When the defendant objects to the admissibility of the State's evidence on the ground that it was obtained by unlawful search, it is the duty of the trial court, in the absence of the jury, to hear the evidence of the State and of the defendant regarding the lawfulness of the search and seizure and to make findings thereon. *State v. Eppley,* 282 N.C. 249, 192 S.E. 2d 441 (1972) ; *State v. Pike,* 273 N.C. 102, 159 S.E. 2d 334 (1968) ; *State v. Myers,* 266 N.C. 581, 146 S.E. 2d 674 (1966).

[2] Here, both the State and defendants were afforded, on *voir dire,* ample opportunity to establish the facts as they believed them to be. The record shows that examination of each witness was extensive and penetrating. Our research has discovered no case holding that the order of offering testimony is a factor to be considered in determining the fairness of a *voir dire* hearing. The important requirement was met in that defendants and the State were each afforded equal opportunity to present their case to the trial judge on *voir dire.* Defendants' first assignment is therefore overruled.

[3] Defendants next assign as error the introduction of the pills seized in the apartment before defendant Crews was taken to the police station and the introduction of the pills seized pursuant to a search warrant obtained on the basis of the first seizure.

On *voir dire* Officer Spillman testified that he was at defendants' apartment for the purpose of serving a capias on defendant Crews; that he was invited in by Miss Wall and was told by her that Crews was in the back bedroom. The officers went there and found the two defendants in bed. When Crews was told that he was to accompany the officers to police headquarters, he got out of bed and went toward a closet to get his clothes. The light was on and Officer Spillman testified he looked toward the closet and saw on the shelf a clear, brown-tinted, pint-size bottle that contained several hundred multi-colored pills. As the officer picked up this bottle, Crews said, "Hey, wait a minute. Those are not mine." As Crews was walking down the hall, the officer heard defendant Parrish ask Crews, "What about the others?"

The officers then took Crews and the bottle to police head-quarters, and the bottle was found to contain approximately eight hundred amphetamine tablets. A warrant was issued for Crews charging him with possession of amphetamines with intent to distribute, and a search warrant was procured for the apartment. The officers returned to Crews' apartment where they found defendant Parrish lying on the bed, with a .22 automatic rifle "jammed" with a live cartridge lying beside her. After taking the rifle, they looked in the closet for a pasteboard box that they had previously seen on the shelf, but it was not there. They found the box under the bed on which defendant Parrish was sitting. It contained several bottles of pills and some loose pills—several thousand in all—which a later examination showed to be amphetamines. Upon hearing this and other testimony, the trial court, after making findings of fact, over-ruled defendants' objection to the introduction of the pills into evidence. The trial court found that the officers were on the premises legally, that the bottle was in plain view, and that no search was required for its seizure. Such findings, when supported by competent evidence, are conclusive on appellate courts. *State v. Lock,* 284 N.C. 182, 200 S.E. 2d 49 (1973) ; *State v. Johnson,* 280 N.C. 295, 185 S.E. 2d 689 (1971) ; *State v. McVay* and *State v. Simmons,* 277 N.C. 410, 177 S.E. 2d 874 (1970).

"The constitutional guaranty against unreasonable searches and seizures does not apply where a search is not necessary, and where the contraband subject matter is fully disclosed and open to the eye and the hand." *State v. Harvey,* 281 N.C. 1, 11, 187 S.E. 2d 706, 713 (1972). *Accord, State v. Virgil,* 276 N.C. 217, 172 S.E. 2d 28 (1970).

Officer Spillman was legally in the apartment. He testified that he had had some training in drug detection, that he had seen amphetamine pills before, and that the pills in the bottle looked like amphetamines. He further testified that the size of the bottle, the large number of pills, and the fact that there was no prescription or label on the bottle, all led him to believe that they were amphetamines.

"When an officer's presence at the scene is lawful, . . . he may, without a warrant, seize evidence which is in plain sight and which he reasonably believes to be connected with the commission of a crime. . . . " 1 Stansbury's N. C. Evidence § 121a (Brandis Rev. 1973). *Accord, Harris .v. United States,* 390

U.S. 234, 19 L.Ed. 2d 1067, 88 S.Ct. 992 (1967) ; *State v. Harvey, supra; State v. DuBoise,* 279 N.C. 73, 181 S.E. 2d 393 (1971).

We hold that under the facts in this case Officer Spillman had reasonable grounds to believe that the bottle, which was in plain view, contained amphetamines, and that the court properly overruled defendants' objection to the admission of the pills found in the bottle.

[4]   Since the bottle contained amphetamines, this fact, coupled with defendant Parrish's statement, "What about the others?", was ample to constitute probable cause for the issuance of the search warrant under which the box of amphetamines was seized.

The assignment of error to the admission of the amphetamines is overruled.

[5]   Defendants finally contend that they were deprived of equal protection under the laws by the fact that they were tried and convicted for a felony when the laws of this State made the offense for which they were charged a misdemeanor.

On 16 May 1973, amphetamines were listed as a Schedule III controlled substance in G.S. 90-91(a) (1971 Cumulative Supplement). On that date, possession of any amount of a Schedule I or Schedule II substance was a felony. G.S. 90-95(c). Possession of a Schedule III or Schedule IV substance was a misdemeanor. G.S. 90-95(d). On 17 May 1973, G.S. 90-90 and G.S. 90-91 were amended by the General Assembly so that amphetamines became a Schedule II substance. Chapter 540, Sections 5 and 6, 1973 Session Laws. The offense here occurred on 16 May 1973, on which date, under G.S. 90-91(a), amphetamines were a Schedule III substance, the possession of which was a misdemeanor. G.S. 90-95(d). If these were all the pertinent facts, defendants' contention would be correct. However, by order dated 23 March 1972, effective 24 April 1972, the State Board of Health (now Commission for Health Services), acting within its delegated authority pursuant to G.S. 90-88 (1971 Cumulative Supplement), reclassified amphetamines from a Schedule III substance to a Schedule II substance. Under the law at that time (G.S. 90-95(c)), possession of any amount of a Schedule II substance was a felony.

The State Board of Health, in rescheduling subtances under the Controlled Substances Act, was acting under detailed guide-

lines established by the General Assembly in G.S. 90-88, which in pertinent part provided:

"Authority to control.— (a) . . . In making a determination regarding a substance, the North Carolina State Board of Health shall consider the following:

(1) The actual or relative potential for abuse;

(2) The scientific evidence of its pharmacological effect, if known;

(3) The state of current scientific knowledge regarding the substance;

(4) The history and current pattern of abuse;

(5) The scope, duration, and significance of abuse;

(6) The risk to the public health;

(7) The potential of the substance to produce psychic or physiological dependence liability; and

(8) Whether the substance is an immediate precursor of a substance already controlled under this Article.

"(b)  After considering the required factors, the North Carolina State Board of Health shall make findings with respect thereto and shall issue an order adding, deleting or rescheduling the substance within Schedules I through VI of this Article."

G.S. 90-88 also provided that a public hearing must be held prior to the adding, deleting or rescheduling of any controlled substance within Schedules I through VI. Prior notice of such hearing must be placed in three newspapers of State-wide circulation. The statutes then provided for notice to the public of rules amended or promulgated by the Board by filing copies in the office of the Secretary of State and with the clerks of the superior courts. G.S. 143-195; G.S. 143-198.1.

Counsel for defendants in his brief admits that the contention regarding whether the acts of defendants constitute a misdemeanor or a felony was not raised in the Superior Court or in the Court of Appeals. This Court will not decide questions which have not been presented or adjudicated in the courts below, especially questions relating to the constitutionality of a statute. As we said in *State v. Jones,* 242 N.C. 563, 89 S.E. 2d 129

(1955): ". . . [I]n conformity with the well established rule of appellate courts, we will not pass upon a constitutional question unless it affirmatively appears that such question was raised and passed upon in the court below. [Citations omitted.]" *Accord, State v. Cumber,* 280 N.C. 127, 185 S.E. 2d 141 (1971); *State v. Dorsett* and *State v. Yow,* 272 N.C. 227, 158 S.E. 2d 15 (1967). Since the question of the constitutionality of G.S. 90-88 was not before the Superior Court or the Court of Appeals, it is not properly before us. Therefore, we do not pass upon the constitutionality of this statute.

For the reasons stated, the decision of the Court of Appeals is affirmed.

Affirmed.

Chief Justice BOBBITT not sitting.

Justice SHARP dissenting:

As I see it the "plain view" doctrine is not applicable to the facts of this case, and the trial judge erred in overruling defendants' motion to suppress State's Exhibit 1, a box containing several thousand pills, and State's Exhibit 1-B, a brown glass bottle containing several hundred pills, for the reason that they were the fruits of an unconstitutional seizure. In brief summary, the State's evidence tended to establish the following facts:

About 4:00 a.m. on 16 May 1973, R. A. Spillman and D. W. Rogers, police officers of the City of Winston-Salem, for the purpose of serving an instanter capias upon defendant Crews, went to the apartment occupied by defendants. They were admitted to the apartment by a third occupant, who directed them to the room where defendants were sleeping. The officers arrested Crews and directed him to get dressed in order to go to jail. When Crews started toward the closet, the door of which was open, the officers observed a pint bottle of clear brown glass, which they could see contained several hundred pills. When Spillman reached up to take the bottle off the shelf Crews said, "Hey, wait a minute. These are not mine." There was no label or identification whatever on the outside of the bottle. On the shelf next to the bottle was a pasteboard box.

State v. Crews

Although the officers conceded they could not know the nature of the contents they "thought they knew what it was." It came to Officer Spillman "as being some kind of contraband, possibly amphetamines." Crews and the bottle were taken to the county jail. Long, a narcotics' officer, ran preliminary tests on some of the pills in the bottle and found them to be amphetamines. He testified that he could not say the pills contained a controlled substance merely by looking at them. On the basis of this evidence Crews was arrested upon a warrant charging him with the possession of amphetamines with the intent to distribute, and a warrant authorizing the search of Crews' apartment was issued. When the officers returned to the apartment the pasteboard box, which had been on the closet shelf, was found concealed beneath a bed. It contained several thousand multicolored pills.

On 21 May 1973 a toxicologist at North Carolina Baptist Hospital analyzed the pills taken from the defendants' apartment. He found the pills in the box (Exhibit 1) and the brown bottle (Exhibit 1-B) to contain amphetamine. He testified that, without having made a chemical analysis, he could not have known that the pills contained a controlled substance; that merely by looking at the bottle of pills he would not know that "there was any law being violated."

The trial judge's finding that the officers were legally in defendants' bedroom and that the brown bottle on the closet shelf was in plain view are clearly supported by the evidence. In my view, however, neither his finding of fact that "the contraband was seen 'in plain view,' " nor his legal conclusion that the later-issued search warrant was valid, can be supported.

In plain view was only a brown bottle containing pills. The bottle itself was not contraband. Obviously it was impossible by sight to identify pills in a glass bottle, tinted brown and bearing no label, as amphetamines, or any other controlled substance. The evidence conclusively establishes that, even after opening the bottle and scrutinizing the pink pills which it was found to contain, neither Officers Spillman and Rogers nor Officer Long could say whether they contained amphetamine. A chemical analysis at the police station was required to establish that the pills were contraband. See People v. Marshall, 69 Cal. 2d 51, 442 P. 2d 665, 69 Cal. Rptr. 585 (1968); Miramontes v. Superior Court for County of San Mateo, 25 Cal. App. 3rd 877, 102 Cal. Rptr. 182 (1972).

In point with this case is *State v. Meichel,* 290 So. 2d 878 (La. 1974). In that case the officers removed a bottle of pills from the front seat of the defendant's automobile. They then searched the trunk of the vehicle and found marijuana. In rejecting the State's contention "that the plain view seizure of the pills established probable cause for a search of the automobile" the Louisiana Supreme Court said:

"A policeman does not have the right to seize any object in his view in order to examine it and determine if it is or would be evidence in a criminal prosecution. An object in open plain view may be seized only where it is readily apparent that the object is contraband or evidence. *See Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 2038, 29 L.Ed. 2d 564 (1971).

"In the instant case the testimony of the officer making the seizure is clearly to the effect that he did not know the nature of the pills until after he had picked up the bottle and examined it. He did not know at the time he saw the pills that there was a probability that they were contraband and probably evidence. This seizure does not fall within the plain view exception to the warrant requirement. As such the seizure violated defendant's constitutional rights and was illegal." *Id.* at 880.

In another recent decision, different factually, but applying the same general principles, the Supreme Court of North Dakota held that the "plain view" exception "does not apply to sealed packages the appearance of which is not indicative of their illicit contents." *State v. Matthews,* 216 N.W. 2d 90, 100 (N.D. 1974). In that case, the police had opened two sealed envelopes which they suspected contained marijuana. Their suspicions proved to be correct. However, the court nonetheless excluded this evidence. In concluding that the motion to suppress should have been granted it said: "When police assume the function of the magistrate, they act beyond the law and the evidence they obtain by so acting is excluded. In regrettable consequence, the guilty may go free, but the alternative—permitting warrantless rummaging through private property—is worse. The remedy for both evils is for the police to obey the law, not for the courts to ignore the Constitution." *Id.* at 104. With reference to the nonapplicability of the "plain view" exception to sealed packages, see *United States v. Sokolow,* 450 F. 2d 324 (5th Cir. 1971) ; *People v. Marshall, supra.*

In *Stanley v. Georgia,* 394 U.S. 557, 22 L.Ed. 2d 542, 89 S.Ct. 1243 (1969), under a search warrant, federal and state

agents searched defendant's home for evidence of bookmaking activities, which they did not find. However, they did find three reels of film. Using a projector and screen, which they found on the premises, they concluded that the films were obscene and seized them. The Supreme Court disposed of the case by holding that the Georgia statute under which defendant was convicted was unconstitutional insofar as it made mere private possession of obscene matter a crime. In a concurring opinion, however, Justices Stewart, Brennan and White addressed themselves to the ruling of the Georgia Supreme Court that the films had been lawfully seized—a preliminary issue which the majority opinion ignored.

In concluding that the films were inadmissible in evidence at the appellant's trial, the concurring Justices said: "This is not a case where agents in the course of a lawful search came upon contraband, criminal activity, or criminal evidence in plain view. For the record makes clear that the contents of the film could not be determined by mere inspection. . . . After finding them, the agent spent some 50 minutes exhibiting them by means of the appellant's projector in another upstairs room. Only then did the agents return downstairs and arrest the appellant. . . . To condone what happened here is to invite a government official to use a seemingly precise and legal warrant only as a ticket to get into a man's home, and, once inside, to launch forth upon unconfined searches and indiscriminate seizures as if armed with all the unbridled and illegal power of a general warrant." *Id.* at 571-572.

In my opinion the "plain view" doctrine justifies a warrantless seizure only when it is apparent to the police that they have evidence or contraband before them. My vote, therefore, is to reverse.