IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-683

No. COA22-126

Filed 18 October 2022

Gaston County, Nos. 20CRS60100, -60101

STATE OF NORTH CAROLINA

v.

BRANDON KEITH HUNTER

Appeal by Defendant from order entered 12 August 2021 by Judge F. Donald Bridges in Gaston County Superior Court. Heard in the Court of Appeals 7 September 2022.

*Attorney General Joshua H. Stein, by Assistant Attorney General Caden William Hayes, for the State-Appellee.*

*Appellate Defender Glenn Gerding, by Assistant Appellate Defender Daniel Shatz, for Defendant-Appellant.*

COLLINS, Judge.

¶ 1　　Defendant Brandon Keith Hunter appeals from the trial court's order denying Defendant's motion to suppress and judgment entered upon Defendant's plea of no contest to possession of a schedule II controlled substance, possession of non-marijuana drug paraphernalia, and failure to stop at a stop sign. Defendant contends that the trial court erred by denying his motion to suppress because there was no probable cause to search and seize items from Defendant's car. Because

Officer Stanley did not conduct a search within the meaning of the Fourth Amendment when he shined a flashlight into Defendant's vehicle and because it was immediately apparent that the plastic baggie in plain view was contraband, we affirm the trial court's order and judgment.

## I.    Procedural History and Factual Background

¶ 2      On the evening of 19 October 2020, Officers Steven Hoyle and Heath Stanley were patrolling near Glenn Street in Gaston County when they observed a car, driven by Defendant, roll through a stop sign. The officers activated their emergency lights and sirens, and the car continued to roll for approximately 200 feet before coming to a stop. Stanley approached the passenger side of the car, initiated conversation with Defendant, and shined his flashlight around "[Defendant]'s area, the center console area, passenger area and behind [Defendant]'s seat" to look for weapons or contraband. While Stanley was doing so, Hoyle returned to the police car "to do a warrant check of the vehicle and do a warrant check of the vehicle and Mr. Hunter's license."

¶ 3      Stanley continued speaking with Defendant and shining the flashlight through the car windows for a "couple of minutes" before seeing a plastic baggie between Defendant's seat and the door. Officer Stanley suspected the plastic baggie contained "illegal narcotics and crack-cocaine" because it had a "white rock substance inside" and had the "tie ripped off." Defendant was detained, and the plastic baggie

retrieved. The officers suspected the contents of the baggie was crack-cocaine, and the contents "later field tested positive."

¶ 4    Defendant was indicted for possession of a schedule II controlled substance, possession of non-marijuana drug paraphernalia, and failure to stop at a stop sign. Defendant filed a motion to suppress, arguing that Defendant had done nothing other than run a stop sign; that Officer Stanley deliberately extended contact with Defendant to continue a warrantless search of Defendant's car; and that even if Officer Stanley observed the plastic baggie in plain view, it did not give rise to probable cause to search the vehicle. The trial court denied the motion.

¶ 5    Defendant entered a plea of no contest to possession of a schedule II controlled substance, possession of non-marijuana drug paraphernalia, and failure to stop at a stop sign, reserving his right to appeal the denial of his motion to suppress. The trial court sentenced Defendant to 6 to 17 months' imprisonment, suspended for 24 months of supervised probation. Defendant timely appealed.

## II.    Discussion

¶ 6    Defendant contends that the trial court erred by denying his motion to suppress because Stanley lacked probable cause to search the car, and the stop was inappropriately pretextual.

¶ 7    "The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether

the findings of fact support the conclusions of law." *State v. Jackson*, 368 N.C. 75, 78, 772 S.E.2d 847, 849 (2015) (citations omitted). "The trial court's findings of fact regarding a motion to suppress are conclusive and binding on appeal if supported by competent evidence." *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648 (2007) (citations omitted). "Unchallenged findings of fact are binding on appeal." *State v. Fizovic*, 240 N.C. App. 448, 451, 770 S.E.2d 717, 720 (2015) (citation omitted). "Conclusions of law are reviewed de novo and are subject to full review." *State v. Sutton*, 259 N.C. App. 891, 893, 817 S.E.2d 211, 213 (2018) (citation omitted).

## A. Probable Cause

¶ 8 Defendant first contends that Stanley lacked probable cause to search the vehicle and seize the plastic baggie of contraband.

¶ 9 The Fourth Amendment to the United States Constitution and Article I, Section 20 of the North Carolina Constitution prohibit unreasonable searches and seizures. *State v. Pasour*, 223 N.C. App. 175, 176, 741 S.E.2d 323, 324 (2012) (citation omitted); *State v. Arrington*, 311 N.C. 633, 643, 319 S.E.2d 254, 260 (1984) (citation omitted). "[W]hat the Constitution forbids is not all searches and seizures, but *unreasonable* searches and seizures . . . . A search occurs when the government invades reasonable expectations of privacy to obtain information." *State v. Ladd*, 246 N.C. App. 295, 301, 782 S.E.2d 397, 401 (2016) (citations omitted). "Officers who lawfully approach a car and look inside with a flashlight do not conduct a 'search'

within the meaning of the Fourth Amendment." *State v. Brooks*, 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994) (citing *Texas v. Brown*, 460 U.S. 730 (1983) (holding that an officer's initial stop of defendant's vehicle was valid, and shining his flashlight into the car and changing his position to see what was inside, did not violate any Fourth Amendment rights); *State v. Whitley*, 33 N.C. App. 753, 236 S.E.2d 720 (1977). Moreover, "[v]iewing an article that is already in plain view does not involve an invasion of privacy and, consequently, does not constitute a search implicating the Fourth Amendment." *State v. Alexander*, 233 N.C. App. 50, 55, 755 S.E.2d 82, 87 (2014) (citations omitted).

¶ 10 "When an officer's presence at the scene is lawful, . . . he may, without a warrant, seize evidence which is in plain sight and which he reasonably believes to be connected with the commission of a crime." *State v. Crews*, 286 N.C. 41, 45, 209 S.E.2d 462, 465 (1974) (citations omitted). Under the plain view doctrine, a warrantless seizure is lawful if

> (1) the officer was in a place where he had a right to be when the evidence was discovered; (2) the evidence was discovered inadvertently; and (3) it was immediately apparent to the police that the items observed were evidence of a crime or contraband.

*State v. Newborn*, 279 N.C. App. 42, 2021-NCCOA-426, ¶ 37 (emphasis and citation omitted). "Our courts have defined the term immediately apparent as being satisfied where the police have probable cause to believe that what they have come upon is

evidence of criminal conduct." *State v. Green*, 146 N.C. App. 702, 706, 554 S.E.2d 834, 836 (2001) (ellipses, quotation marks, and citation omitted).

¶ 11 Here, the trial court made the following relevant and unchallenged findings of fact:

> 4. As Officers Hoyle (driving) and Stanley (passenger) were on Glenn Street, they got behind a blue Chevrolet PT Cruiser being driven by the defendant.
>
> 5. The Chevrolet PT Cruiser rolled through a duly erected (sic) providing reasonable suspicion to stop the vehicle.
>
> 6. The officers activated their blue lights and siren.
>
> 7. The PT Cruiser continued to roll forward for 200 feet . . . where he stopped.
>
> 8. Officers approached the vehicle: Officer Hoyle on the driver side and Officer Stanley on the passenger side.
>
> 9. Officers got the Defendant's ID, and the Defendant provided a bill of sale on the vehicle and engaged the defendant about the sale of the vehicle.
>
> 10. During the conversation, Officer Stanley continually shined his flashlight inside the vehicle.
>
> 11. Officer Hoyle went back to the vehicle to do a record check/license check on the Defendant.
>
> 12. Officer Stanley remained engaged and talking to the defendant and continued to shine the flashlight inside the vehicle.
>
> 13. On the third pass through with the flashlight into the back seat of the vehicle, Officer Stanley caught a glimpse of what appeared to be a white plastic bag he deduced to be possibly a controlled substance, either crack or powder cocaine.
>
> 14. Stanley communicated to Officer Hoyle what he saw in the vehicle.

15. Stanley went to the driver side of the car and removed, searched and detained the Defendant.

16. Officer Stanley then opened the back driver-side door, reached down to the floorboard and extracted a plastic bag that upon closer examination appeared to contain powder or rocklike substance and deduced that the substance was cocaine and field tested the substance whereupon it tested positive.

Upon these facts, the trial court concluded as follows:

1. Even if there was a purposeful interior (sic) of the vehicle with the use of a flashlight and even though the item found was not obviously apparent, nevertheless it was discovered by Officer Stanley with the naked eye, with the use of a flashlight without opening the door or going inside the vehicle.

2. Officer Stanley was immediately able to recognize that the plastic baggie and rock-like substance was contraband.

3. Although there was some lapse of time between the time of the initial stop and when the defendant was extricated from the vehicle, it does not appear that the officers prolonged the stop in order to do a search not related to the stop of the vehicle.

4. Thus, the search was not unreasonable.

5. That the purpose of the stop, even if it was pretextual, was lawful because it was conducted after a violation of a traffic law.

6. Thus, there was no violation of State or Federal law and the [s]top on the defendant was Constitutional and valid.

¶ 12    The trial court's findings show that Hoyle and Stanley watched Defendant roll through a duly erected stop sign, supporting the conclusion that the traffic stop was lawful. The facts further show that after Defendant stopped, Stanley approached

Defendant's car and engaged Defendant in conversation while shining a flashlight into the interior of Defendant's car. While doing so, Stanley spotted a white plastic baggie. Stanley did not conduct a "search" within the meaning of the Fourth Amendment when he lawfully approached Defendant's car and looked inside with a flashlight. *See Brooks*, 337 N.C. at 144, 446 S.E.2d at 587. Furthermore, Stanley did not conduct a "search" within the meaning of the Fourth Amendment when he observed the plastic baggie in plain view. The findings of fact support the trial court's conclusion that "the search was not unreasonable."

¶ 13    Moreover, the trial court found that upon observing the plastic baggie, Stanley "deduced [it] to be possibly a controlled substance, either crack or powder cocaine." This finding supports the trial court's conclusion that Stanley was "immediately able to recognize that the plastic baggie and rock-like substance was contraband." *See Crews*, 286 N.C. at 45, 209 S.E.2d at 465. Because Stanley was in a place where he had a right to be when the baggie was discovered, the baggie was discovered inadvertently, and Stanley had probable cause to believe that the baggie and its contents were contraband, Stanley was authorized to seize the baggie without a warrant. *See Newborn*, 2021-NCCOA-426 at ¶ 37. Accordingly, the findings of fact support the trial court's conclusion that "there was no violation of State or Federal law . . . ."

**B. Pretextual Stop**

¶ 14    Defendant contends "[f]or preservation purposes" that the traffic stop of Defendant's vehicle was inappropriately pretextual.

¶ 15    As Defendant concedes, both the United States Supreme Court and our North Carolina Supreme Court have ruled that an officer's subjective motive for a stop has no bearing on the Fourth Amendment analysis. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *State v. McClendon*, 350 N.C. 630, 635-36, 517 S.E.2d 128, 131-32 (1999).

> In analyzing federal constitutional questions, we look to decisions of the United States Supreme Court[,] . . . [and] decisions of the North Carolina Supreme Court construing federal constitutional . . . provisions, and we are bound by those interpretations. We are also bound by prior decisions of this Court construing those provisions, which are not inconsistent with the holdings of the United States Supreme Court and the North Carolina Supreme Court.

*Johnston v. State*, 224 N.C. App. 282, 288, 735 S.E.2d 859, 865 (2012) (citing *State v. Elliott*, 360 N.C. 400, 421, 628 S.E.2d 735, 749 (2006), and *In re Civil Penalty*, 324 N.C. 373, 379 S.E.2d 30 (1989)).

## III.    Conclusion

¶ 16    The trial court's denial of Defendant's motion to suppress is affirmed.

AFFIRMED.

Judges DIETZ and CARPENTER concur.