STATE OF NORTH CAROLINA v. TRACY THOMAS PECK

No. 8130SC203

(Filed 20 October 1981)

**Searches and Seizures § 33— "plain view" rule—evidence seized from passenger of vehicle**

It was not error for the court to deny defendant's motion to suppress evidence of drugs found on defendant's person where the State's evidence tended to show that defendant was a passenger in a car which had been lawfully stopped; that the officer talked to defendant and detected a faint odor of alcohol, observed defendant's pupils were dilated, his eyes were red, there was mucous on the corner of his mouth, and he was "kind of cotton mouthed"; that the officer asked defendant if he had "dope"; that defendant stuck his hand in his pants and the officer grabbed his hand and jerked it out of his pants; that when the officer grabbed his hand, the corner of a plastic bag was revealed; and that the officer seized the bag as being in "plain view."

Judge WELLS dissenting.

APPEAL by defendant from *Lewis, Judge.* Judgment entered 2 October 1980, in Superior Court, JACKSON County. Heard in the Court of Appeals 2 September 1981.

Defendant appeals from a plea of guilty after the denial of his motion to suppress evidence. He was charged with possession of a Schedule I controlled substance, and was given a suspended sentence of five years imprisonment.

*Attorney General Edmisten, by Assistant Attorney General Guy A. Hamlin, for the State.*

*Thomas W. Jones for defendant appellant.*

MORRIS, Chief Judge.

G.S. 15A-979(b) gives the right of appeal from a plea of guilty following the denial of a suppression motion. In interpreting the statute, the Supreme Court in *State v. Reynolds,* 298 N.C. 380, 397, 259 S.E. 2d 843, 853 (1979), through Justice Carlton for a unanimous court on this question, held that "when a defendant intends to appeal from a suppression motion denial pursuant to G.S. 15A-979(b), he must give notice of his intention to the prosecutor and the court before plea negotiations are finalized or he will waive the appeal of right provisions of the statute." The dissent

(in part and on other grounds) by Justice Exum referred to the necessity of notice that the defendant was "pleading guilty conditionally under G.S. 15A-979(b)" because the "legislature did not intend for a defendant to have it both ways", noting that "the state is entitled to rely on a negotiated plea, nothing else appearing, as being a full and final settlement of the entire matter." Supra, at 405, 259 S.E. 2d at 857. Here, the record states that "the defendant in open court gave notice of appeal to the North Carolina Court of Appeals, pursuant to G.S. 15A-979(b)." This appears after the sentence was imposed and execution thereof suspended for five years and the defendant placed on probation under the usual rules of probation and certain special conditions. Transcript of plea in this case leaves unanswered the question, "Have you agreed to plead as a part of a plea bargain?" We assume that the plea entered was not the result of a plea bargain and answer the issue raised by the appeal.

The evidence for the state on defendant's motion to suppress is summarized as follows:

Officer Cruzan, a North Carolina State Highway Patrolman, went to the campus of Western Carolina University in response to a call from Security Officer Shelton for assistance. Officer Shelton had stopped a vehicle and had the driver of the vehicle under arrest for "no driver's license". He was the only security officer on duty at the time and had orders not to leave campus unless he absolutely had to. He had noticed dust flying and "tires squealing" and stopped the car to check the reason for the way the driver was operating the car. The two officers learned that the driver's license had been revoked. Officer Cruzan asked Officer Shelton whether he had checked the passenger in the vehicle. Upon receiving a response in the negative and a suggestion that the passenger appeared to be intoxicated, Officer Cruzan went to the passenger side of the car, opened the door, and started to talk to the defendant, who was seated in the car. Defendant stated "I'm feeling sick." The officer suggested that he should step outside if he was going to "throw up". Defendant replied, "I'm not going to throw up. I just don't feel good." Whereupon the officers squatted beside defendant and said: "Son, do you have dope in here or on you?" Defendant "leaned back and stuck his left hand down in the front of his pants." When defendant did that, Officer Cruzan grabbed his hand and jerked it out of

his pants. At that time, when he took defendant's hand from his trousers, he could see the corner of a plastic bag. Officer Cruzan got defendant out of the car reached in his pants and pulled out a plastic bag containing a white powdery substance. He then advised defendant of his constitutional rights and proceeded to search the vehicle. When Officer Cruzan first saw defendant, he detected a faint odor of alcohol and observed that defendant's pupils were dilated, his eyes were red, there was mucous on the corner of his mouth, and he was "kind of cotton mouthed". He had no reason to believe that defendant was going for a weapon.

Some 20 to 30 minutes elapsed from the time Officer Shelton called for assistance to the time Officer Cruzan arrived on the scene. During all this time, the driver was seated in Officer Shelton's car.

The defendant offered into evidence the affidavit given in support of the motion to suppress and was tendered for cross examination. The statements in his affidavit are summarized as follows: When Officer Cruzan asked him to step out of the vehicle he said that he "did not feel too well." The officer then told him to get out of the car whereupon he said to the officer. "I don't want to get out, I don't feel like it, I'm sick." The officer then "suddenly and abruptly" opened the door and grabbed the defendant, pushing him against the seat. He then "began to try to force his hand and arm down the pants of" the defendant, at the same time pulling and grabbing him in an attempt to get him out of the car. The officer did pull defendant out of the car and pushed him up against the side of the vehicle, still "trying to force his hand and arm down into" defendant's pants. "Suddenly and abruptly" the officer pulled a bag out of defendant's pants, seized it and its contents, and took it into his possession.

The court made findings of fact and concluded: (1) the officer was in a place where he had a right to be; that he had a duty to secure the car of the person under arrest and to check the passenger therein; (2) the revelation of the white powder material in a plastic bag is not the fruit of an unlawful search and seizure; and (3) the seizure was of materials in plain view after the officer removed the arm of Mr. Peck from his trousers. The court further concluded:

There is no evidence to support the conclusion that Mr. Cruzan was using his position, or the fact that the car was stopped, for the purpose of making an otherwise unlawful search and discovery of contraband materials. On the contrary, the grabbing of the passenger's arm, which was being thrust into the belt of his trousers is a prudent action on the part of the investigating officer and is not unreasonable even if there was a search and seizure; the seizure of the plastic material from the person of Mr. Peck was fortuitous and unplanned and is not an unreasonable seizure.

Defendant does not except to any conclusion of law. He excepts to only one finding of fact—Finding of Fact No. 8—"whereupon Officer Cruzan observed, for the first time, a corner of a plastic bag containing a white powder, and the powder was subsequently seized and the defendant moved to suppress as being an unlawful search and seizure." Defendant argues that the court found as a fact that the officer observed the contents of the plastic bag. It is clear that the court finds only that the officer "observed a corner of a plastic bag." The bag did contain a white powder, as it was later determined and this phrase used by the court merely describes the bag. Nowhere does the court find that the officer at that time observed the contents of the plastic bag. The finding is clearly supported by the evidence.

Defendant contends further that the court's conclusions of law are erroneous and that the evidence establishes an illegal search and seizure. We disagree.

The court concluded that "the seizure was of materials in plain view after the officer removed the arm of Mr. Peck from his trousers." We agree that the plain view doctrine is applicable and that all the elements are present. "The constitutional guaranty against unreasonable searches and seizures does not apply where a search is not necessary, and where the contraband subject matter is fully disclosed and open to the eye and hand." *State v. Harvey*, 281 N.C. 1, 11, 187 S.E. 2d 706, 713 (1972). The four elements of the "plain view doctrine" were enunciated by the Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 2d 564 (1971). First, the officer must have had a prior justification for an intrusion. This element is interpreted to mean simply that the officer had legal justification to be at the

place where he sees evidence in plain view. *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979). There can be no serious question but that the officer's presence at the scene was lawful. He had been called to assist the security officer. The driver of the car was seated in the security officer's car. The officer had inquired whether the passenger had been checked. The security officer told the officer that he had not checked the passenger but that he appeared to be intoxicated. Whereupon the officer went to the passenger side of the car, opened the door, and began a conversation with the passenger. As Justice Brock noted in Thompson, supra, at 705, 252 S.E. 2d at 778, quoting from *United States v. Hill*, 340 F. Supp. 344 (E.D. Pa. 1972), "No one is protected by the Constitution against the mere approach of police officers in a public place." Here, the driver of the car in which defendant was a passenger was under arrest. Clearly, the officer was justified in going to the car to talk with the passenger. Defendant told the officer that he felt sick, and the officer suggested that defendant should get out of the car if he was going to "throw up". Defendant replied that he wasn't going to throw up, that he just didn't feel good. The officer had already observed that defendant's pupils were dilated, his eyes were red, there was mucous in the corner of his mouth, and he was "cotton mouthed". Defendant's condition would certainly indicate to any person possessing any knowledge of the use of contraband that defendant had recently used drugs. The officer squatted by the car and said, "Son, do you have any dope in here or on you?" Defendant's response was to lean back and stick his left hand down in the front of his pants. It was then that the officer grabbed his hand and jerked it out of his pants. When he took defendant's hand from his trousers, the officer saw the corner of a plastic bag. Given defendant's condition—dilated pupils, mucous in the corner of his mouth, and his "cotton mouthed" speech—and his actions, it is obvious that an experienced police officer would reasonably suspect that defendant was attempting to hide contraband. Additionally, the widespread use of plastic and glassine bags for the transportation of contraband is as well known to police officers as the use of fruit jars was for the transportation of illicit liquor.

The second element set out in *Coolidge*, inadvertent discovery, is not so clearly defined in *Coolidge*. We do not think

definition is needed here. Certainly, when the officer approached the defendant here he did not anticipate finding contraband.

The reason for the third requirement—that the evidence must be immediately apparent—is to prohibit a general exploratory search from one object to another until something is eventually found which may incriminate the defendant. "[T]he issue is not whether the object is contraband, but whether the discovery under the circumstances would warrant a man of reasonable caution in believing that an offense has been committed or is in the process of being committed, and that the object is incriminating to the accused." *State v. Wynn*, 45 N.C. App. 267, 270, 262 S.E. 2d 689, 692 (1980), citing *U.S. v. Truitt*, 521 F. 2d 1174 (6th Cir. 1975). Clearly, the circumstances here supported the officer's belief that defendant possessed contraband and that he was attempting to hide evidence which would incriminate him.

The fourth element enunciated in *Coolidge* is that the evidence must be in plain view. "Plain view does not require unobstructed sight, but only as much sight as is necessary to give a reasonable man the belief that there is evidence of criminal activity present." *State v. Wynn*, supra, at 270, 262 S.E. 2d at 692. When Officer Cruzan removed defendant's hand from his pants and saw the corner of a plastic bag, he would have been derelict in his duty had he not gotten defendant out of the car and obtained the plastic bag which was in plain view when he removed defendant's hand from his pants.

The trial court correctly denied defendant's motion to suppress and the judgment is

Affirmed.

Judge CLARK concurs.

Judge WELLS dissents.

Judge WELLS dissenting.

I begin my analysis of this case with the conclusion that Officer Cruzan's accusatory question: ". . . [Do] you have dope in here or on you?" constituted a "seizure" invoking defendant's Fourth Amendment rights. *United States v. Mendenhall*, 446 U.S.

544, 64 L.Ed. 2d 497, 100 S.Ct. 1870 (1980). We may take judicial notice of the fact that Cruzan, a State Highway Patrolman, was in uniform and armed. The accusation directed by him at defendant was sufficient to give rise to a reasonable apprehension by defendant that he was at least being detained for investigation. Officer Cruzan's initial intrusion into defendant's privacy was justified only if Cruzan could reasonably suspect that criminal activity was afoot requiring an investigation of defendant's conduct. *Terry v. Ohio*, 392 U.S. 1, 20 L.Ed. 2d 889, 88 S.Ct. 1868 (1968). *See also Reid v. Georgia*, 448 U.S. 438, 65 L.Ed. 2d 890, 100 S.Ct. 2752 (1980); *State v. Thompson*, 296 N.C. 703, 252 S.E. 2d 776 (1979); *State v. McZorn*, 288 N.C. 417, 219 S.E. 2d 201 (1975); *State v. Streeter*, 283 N.C. 203, 195 S.E. 2d 502 (1973). The dispositive question then is whether at the time he began his investigation, Cruzan had reasonable grounds to suspect that defendant was illegally in actual or constructive possession of a controlled substance, the crime for which he was arrested and indicted. At the time Cruzan accused defendant of possession, defendant had been sitting quietly in the car for twenty or thirty minutes, was physically ill, and showed symptoms of being either ill or under the influence of some drug or narcotic substance. I do not believe that defendant's statements that he was sick, combined with his physical appearance, gave rise to a reasonable suspicion that defendant illegally possessed a controlled substance, and therefore I would hold that the original intrusion of defendant's privacy rights was invalid. Cruzan's observation of the corner of the plastic bag flowed from this initial invalid intrusion. I cannot agree that Cruzan's right to be where he was, i.e., at the side of the stopped car, gave him the right to initiate a warrantless search for controlled substances.

I would hold that the incriminating evidence seized by Cruzan should have been suppressed and that defendant is therefore entitled to a new trial.