IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-410

Filed 3 September 2024

Hoke County, Nos. 20 CRS 368, 50657-58

STATE OF NORTH CAROLINA

v.

BRYANT R. LITTLE

Appeal by defendant from orders and judgments entered 13 July 2022 and 26 August 2022 by Judge Michael A. Stone in Superior Court, Hoke County. Heard in the Court of Appeals 20 November 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Martin T. McCracken, for the State.*

*Jarvis John Edgerton, IV, for defendant-appellant.*

STROUD, Judge.

Defendant appeals from the trial court's denial of his motion to suppress evidence of a firearm, bullets, alleged marijuana, and sandwich bags found during a roadside vehicular search. Defendant contends that the law enforcement officer's grounds for probable cause, the odor and appearance of marijuana, was insufficient to conduct a search of his vehicle. Thus, Defendant argues the evidence was obtained through an unlawful warrantless search and all evidence obtained should have been suppressed. We hold that the trial court did not err when it denied Defendant's motion to suppress, as probable cause existed to search Defendant's vehicle without a warrant.

## I.  Factual and Procedural Background

On 12 May 2020, Hoke County Sheriff's Deputy Daniel Barron observed a Ford F-150 truck "cross the center line and travel left of center at least on three separate occasions." Deputy Barron executed a traffic stop on the vehicle. The trial court made the following findings of fact as to the traffic stop and search:

> 3. That Barron approached the driver's side of the F-150 and the driver's window was down. That Barron immediately smelled a strong and distinct odor of marijuana. Barron had over ten years of law enforcement experience and was familiar with the properties and odor of marijuana. That Barron requested the license of the driver and registration of the vehicle. The driver and sole occupant of the F-150 was the defendant, Bryant Little. The defendant could not produce registration for the F-150 and indicated to Barron that the vehicle was a rental.
>
> 4. That backup officers, Corporal Kavanaugh ("Kavanaugh") and Deputy Schell ("Schell") arrived to assist Barron. That both Barron and Schell observed in plain sight on the passenger floorboard of the F-150 extensive marijuana residue which almost completed [sic] covered the area. That the passenger side window was not tinted, nor had any obstructions to obstruct the plain view of the officers.
>
> 5. That Kavanaugh specifically asked the defendant about marijuana and defendant responded by accusing the marijuana residue as being from a cousin. Upon further conversation with the defendant, that Kavanaugh learned that the defendant was on federal post release. The federal criminal judgment includes as a condition that the defendant be subject to warrantless searches. While this may not be relevant to these proceedings, this will be noted by the Court.
>
> 6. At no time did the defendant indicate that the substance

observed in plain view all over the front floorboard of the F-150 was hemp or any other substance not under the subject matter of the North Carolina Controlled Substances Act or Chapter 90 of the North Carolina General Statutes.

7. Additionally, at no time did the defendant claim the substance was hemp or that he was legally entitled to possess the substance. Furthermore, there was no evidence that the controlled substance was hemp.

The officers conducted a full search of the vehicle while Corporal Kavanaugh observed and stayed with Defendant. Ultimately, the officers recovered a firearm; bullets; an open box of sandwich bags; a flip phone; a touch screen cell phone; and $10,600.00 in cash from Defendant's vehicle.

On or about 16 November 2020, Defendant was indicted for possession of a stolen firearm, carrying a concealed firearm, and possession of a firearm by a felon. On 16 May 2022, Defendant filed a motion to suppress all the evidence seized from the search of his vehicle following the traffic stop. Defendant argued that the officers conducted an unlawful search of his vehicle because the odor or appearance of marijuana, standing alone, after the legalization of hemp was insufficient to establish probable cause.

On 12 July 2022 the trial court conducted a hearing on Defendant's motion to suppress and denied the motion in open court that same day, giving a detailed

rendition of its findings of fact and conclusions on the record. On 13 July 2022 and 2 August 2022, the trial court reduced its ruling to written orders.[1]

After the trial court's ruling on the motion to suppress, Defendant pled guilty to possession of a stolen firearm, carrying a concealed firearm, possession of a firearm by a felon, possession of marijuana paraphernalia, and driving left of center. Defendant reserved his right to appeal the denial of his suppression motion. On 13 July 2022, the trial court entered judgment on the charges of possession of a firearm by a felon, possession of a stolen firearm, carrying a concealed gun, and possession of marijuana paraphernalia. Defendant gave oral notice of appeal in open court on 13 July 2022 and later filed written notice of appeal from the trial court's order and judgments on 19 July 2022.

---

[1] We note that the trial court entered two orders denying Defendant's motion to suppress. The hearing was held on 12 July 2022. The trial court rendered a brief ruling denying the motion to suppress on 12 July 2022 and then rendered a detailed ruling on the record on 13 July 2022. The first written order was filed on 13 July 2022; Defendant then filed notice of appeal on 19 July 2022. The second order denying the motion to suppress was filed on 26 August 2022 but states it was "[e]ntered, this the 12th day of July 2022." The second order has more detailed findings of fact than the first order and was based directly upon the oral rendition of the ruling on 12 July 2022 except for the addition of the sentence regarding federal probation. Defendant contends that "[t]he trial court also drafted a second version of its suppression hearing Order, dated August 23, 2022, to which it added the following finding of fact:

    Upon further conversation with defendant, that Kavanaugh learned that the defendant was on federal post release. The federal criminal judgment includes a condition that the defendant be subject to warrantless searches. While this may not be relevant to these proceedings, this will be noted by the Court."

    The only material difference between the two orders is the sentence regarding federal probation. We agree with Defendant that the federal judgment did not provide part of the legal basis for this search, as it was discovered during the course of the search and thus could not have been part of the basis for probable cause to conduct the search.

## II. Standard of Review

Defendant does not challenge any of the trial court's findings of fact but argues only that "the trial court in his case erred when it drew the following conclusion of law from the facts presented at the suppression hearing: Under the totality of circumstances, the officers' smell and opinion regarding the substance being marijuana, law enforcement had probable cause to search defendant's vehicle."

> The standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law. However, when, as here, the trial court's findings of fact are not challenged on appeal, they are deemed to be supported by competent evidence and are binding on appeal. Conclusions of law are reviewed de novo and are subject to full review. Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.

*State v. Biber*, 365 N.C. 162, 167-68, 712 S.E.2d 874, 878 (2011) (citations and quotation marks omitted).

## III. Motion to Suppress

Defendant's sole argument on appeal is that the trial court erred when it denied his motion to suppress the evidence found in his vehicle. Defendant contends that "[a]s our State Bureau of Investigation concluded in a memorandum addressing the impact of the Industrial Hemp Act, it is simply 'impossible' to distinguish legal hemp from illegal marijuana by sight and smell alone." Thus, Defendant asserts that the trial court in his case erred when it concluded "under the totality of the

- 5 -

circumstances, the Hoke County Sheriff's Office deputies had probable cause to search the defendant's vehicle, based on the plain view doctrine and the strong odor of marijuana."

We first note that Defendant did not specifically challenge the trial court's findings of fact as unsupported by competent evidence, so they are binding on appeal.[2] *See id.* Instead, Defendant contends the trial court should have made a finding of fact that hemp and marijuana are indistinguishable by smell or appearance and that this fact requires a conclusion that the officers did not have probable cause to conduct the search. Defendant's "Statement of Facts" section in his brief relies almost entirely upon the transcript and not the trial court's findings of fact. But as Defendant has not challenged the trial court's findings of fact as unsupported by competent evidence, our analysis will rely primarily on those findings. In any event, there is no material difference between the facts as discussed by Defendant and the trial court's findings of fact. Defendant's main argument is that the trial court should have made findings of fact specifically based upon the State Bureau of Investigation ("SBI") memo, particularly as to the inability of officers to distinguish between marijuana and hemp based only upon sight or smell and based upon that finding, the trial court's

---

[2] As noted above, the trial court entered two orders denying Defendant's motion to suppress. The second order has more detailed findings of fact than the first order and appears to be based directly upon the oral rendition of the ruling on 12 July 2022. The orders do not conflict in any material way. Neither party has raised any issue regarding the two orders, and none of the trial court's findings in either order are challenged, so we have relied upon facts from either order as needed.

conclusion of law as to probable cause was error. We review the trial court's conclusion of law *de novo*. *See id.*

## A. The Industrial Hemp Act

Defendant's arguments and the trial court's ruling require us to first address the state of the law in May 2020 as to industrial hemp. Under the Industrial Hemp Act adopted in 2015 and amended in part in 2016 and 2018, the General Assembly established "an agricultural pilot program for the cultivation of industrial hemp in the State" and "to provide for reporting on the program by growers and processors for agricultural or other research, and to pursue any federal permits or waivers necessary to allow industrial hemp to be grown in the State." N.C. Gen. Stat. § 106-568.50 (2019). "Industrial hemp" was defined as "[a]ll parts and varieties of the plant Cannabis sativa (L.), *cultivated or possessed by a grower licensed by the Commission*, whether growing or not, that contain a delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." N.C. Gen. Stat. § 106-568.51(7) (2019). This legislation created a Commission "[t]o establish an industrial hemp research program to grow or cultivate industrial hemp in the State, to be directly managed and coordinated by State land grant universities." N.C. Gen. Stat. § 106-568.53(1) (2019). One of the duties of the commission was "[*t*]*o issue licenses* allowing a person, firm, or corporation to cultivate industrial hemp for research purposes to the extent allowed by federal law, upon proper application as the Commission may specify, and in accordance with G.S. 106-568.53A." N.C. Gen.

Stat. § 106-568.53(2) (2019) (emphasis added). The Commission also was required to "adopt by reference or otherwise the federal regulations in effect regarding industrial hemp and any subsequent amendments to those regulations. No North Carolina rule, regulation, or statute shall be construed to authorize any person to violate any federal law or regulation." N.C. Gen. Stat. § 106-568.53 (2019). The Industrial Hemp Act also established civil penalties and criminal offenses for certain violations of the Act. *See* N.C. Gen. Stat. § 106-568.56 (2019) ("Civil penalty"); *see also* N.C. Gen. Stat. § 106-568.57 (2019) ("Criminal penalties").

In short, under North Carolina law in May 2020, the possession, cultivation, or transportation of industrial hemp was legal under some circumstances, but it was not entirely "legalized"; industrial hemp was still heavily regulated and required a license. *See generally* N.C. Gen. Stat. Ch. 106, art. 50e (2015). To be legal, in addition to having a "delta-9 tetrahydrocannabinol concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis," the industrial hemp was required to be grown or possessed by a person licensed by the Commission to grow industrial hemp. N.C. Gen. Stat. § 106-568.51(7); *see* N.C. Gen. Stat. § 106-568.53(2) (discussing licensing requirements). Therefore, possession of industrial hemp was possibly legal in May 2020, but it was also possibly illegal, depending upon the circumstances. *See id.*

## B. The SBI Memo

Defendant's main argument relies heavily upon an SBI memo ("Memo") issued

in 2019. The Memo has been noted in prior cases of this Court and has been the source of much argument in this case and others. Defendant here even asked the trial court to take judicial notice of this Memo, which the trial court correctly refused to do and Defendant has not challenged that ruling on appeal. Ultimately, the trial court did allow Defendant to introduce the Memo as evidence. The Memo is undated and unsigned but appears to be on letterhead of the North Carolina SBI. As described in *State v. Parker* and discussed at the hearing in this case,

> The memo was published by the SBI in 2019 in response to then-pending Senate Bill 315—legislation which sought to clarify whether the possession of hemp is also legal within the state. S.B. 315 was eventually signed by the Governor and enacted on 12 June 2020, though the final version of the law did not clarify the legality of hemp possession.

277 N.C. App. 531, 540, 860 S.E.2d 21, 28 (2021). The purpose of the Memo was to address various issues and questions for law enforcement raised by Senate Bill 315 which was filed on 20 March 2019 and to suggest "Possible Solutions" to some of those issues. State Bureau of Investigation, Industrial Hemp/CBD Issues (2019). The Memo stated a concern that ***"[t]he unintended consequence upon passage of this bill is that marijuana will be legalized in NC because law enforcement cannot distinguish between hemp and marijuana and prosecutors could not prove the difference in court."*** *Id.* (emphasis in original).

Defendant's argument focuses on the portion of the Memo which states:

> There is no easy way for law enforcement to distinguish between industrial hemp and marijuana. There is

- 9 -

currently no field test which distinguishes the difference.

Hemp and marijuana look the same and have the same odor, both unburned and burned. This makes it impossible for law enforcement to use the appearance of marijuana or the odor of marijuana to develop probable cause for arrest, seizure of the item, or probable cause for a search warrant. In order for a law enforcement officer to seize an item to have it analyzed, the officer must have probable cause that the item being seized is evidence of a crime. The *proposed legislation* makes possession of hemp in any form legal. Therefore, in the future when a law enforcement officer encounters plant material that looks and smells like marijuana, he/she will no longer have probable cause to seize and analyze the item because the probable cause to believe it is evidence of a crime will no longer exist since the item could be legal hemp.

*Id*. (emphasis added).

Defendant also contends this Court addressed the Memo in *Parker* and *State v. Teague,* 286 N.C. App. 160, 879 S.E.2d 881 (2022), stating "[i]n this case at trial, Defendant offered an SBI Memorandum addressing the continued viability of identifying marijuana by sight and smell in light of the Industrial Hemp Act. This is the same SBI Memorandum presented to this Court in *Parker* and *Teague*." *Parker* did address the Memo, and *Teague*[3] cited to *Parker*, but neither *Parker* nor *Teague*

---

[3] In *Teague*, this Court did not address the Memo directly but noted the defendant's arguments based on *Parker*:

Defendant then makes several arguments that arise from our General Assembly's legalization of industrial hemp. *See* An Act to Recognize the Importance and Legitimacy of Industrial Hemp Research, to Provide for Compliance with Portions of the Federal Agricultural Act of 2014, and to Promote Increased Agricultural Employment, S.L. 2015-299,

accorded the Memo the status of binding law. *See Parker*, 277 N.C. App. at 538, 860

S.E.2d at 27; *see also Teague*, 286 N.C. App. at 166, 879 S.E.2d at 888. In *Parker*, the

defendant argued that based on the Memo, there was a material conflict in the

evidence presented at the suppression hearing and the trial court was required to

make findings of fact resolving this conflict. *See Parker*, 277 N.C. App. at 538, 860

S.E.2d at 27. This Court disagreed:

> Defendant appears to argue that a material conflict existed because of the SBI memo that he introduced at the hearing (which discussed the similarities between legal hemp and marijuana), asserting that this memo introduced a conflict regarding whether the odor of marijuana was sufficient to support probable cause.
>
> We disagree. Although the memo did perhaps call into question the State's legal theory regarding whether Officer Peeler's perception of the scent of marijuana provided probable cause to search the vehicle, this conflict was not a material issue of *fact*. Thus, because (1) Defendant introduced no evidence creating a material conflict in the evidence supporting the probable cause determination; and (2) the trial court issued a ruling from the bench to explain its rationale, we hold that the trial court was not required to enter a written order when denying Defendant's motion to suppress.

*Id*. (emphasis in original).

---

2015 N.C. Sess. Laws 1483. The Industrial Hemp Act 'legalized the cultivation, processing, and sale of industrial hemp within the state, subject to the oversight of the North Carolina Industrial Hemp Commission.' *State v. Parker*, 277 N.C. App. 531, . . . 860 S.E.2d 21, *disc. review denied*, 378 N.C. 366, 860 S.E.2d 917 (2021).

*State v. Teague*, 286 N.C. App. 160, 166, 879 S.E.2d 881, 888 (2022).

Thus, *Parker* noted the existence and content of the Memo but concluded it did not create a material conflict in the facts in that case. *Id.*

## C. Plain View Doctrine

The Fourth Amendment of the United States Constitution, as well as Article 1, Section 20 of the North Carolina Constitution, prohibits unreasonable searches and seizures. U.S. Const. amend. IV; N.C. Const. art. I, § 20. "Typically, a warrant is required to conduct a search unless a specific exception applies." *Parker*, 277 N.C. App. at 539, 860 S.E.2d at 28 (citations omitted). One exception is the "motor vehicle exception," which states that the "search of a vehicle on a public roadway or public vehicular area is properly conducted without a warrant as long as probable cause exists for the search." *Id.* (citation omitted). "Probable cause is generally defined as a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing the accused to be guilty of an unlawful act." *Id.* (citation omitted). Under the motor vehicle exception, probable cause exists when

> the existing facts and circumstances are sufficient to support a reasonable belief that the automobile carries contraband materials. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

*Id.* (citation omitted).

Under the plain view doctrine, if a law enforcement officer who has conducted a legal stop of a vehicle or is in a location where he has a right to be observes contraband or other incriminating evidence in plain view, he has probable cause to proceed with a search and seize the item. *See State v. Grice*, 367 N.C. 753, 756-57, 767 S.E.2d 312, 316 (2015) ("While the general rule is that warrantless seizures are unconstitutional, a warrantless seizure of an item may be justified as reasonable under the plain view doctrine, so long as three elements are met: First, 'that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed'; second, that the evidence's 'incriminating character was "immediately apparent"'; and third, that the officer had 'a lawful right of access to the object itself.'" (citations, quotation marks, ellipses, and brackets omitted)). In the context of marijuana, the "plain view" doctrine is often referred to as the plain smell doctrine, as an officer may smell the contraband even if he can't see it. *See State v. Parker*, 285 N.C. App. 610, 628, 878 S.E.2d 661, 675 (2022) ("[T]his Court has previously explained plain smell of *drugs* by an officer is evidence to conclude there is probable cause for a search. *Downing*, 169 N.C. App. at 796, 613 S.E.2d at 39 (emphasis added). In *Downing*, the drug the officers smelled was cocaine, not marijuana. *Id.* And as Defendant recognizes, we have caselaw holding the smell of marijuana alone provides probable cause." (citation and brackets omitted)). Here, the officers both saw and smelled what they believed to be marijuana in Defendant's car.

- 13 -

The United States Supreme Court has held that "officers may rely on a distinctive odor as a physical fact indicative of possible crime[.]" *Taylor v. United States,* 286 U.S. 1, 6, 76 L. Ed. 951, 953 (1932). For an odor to establish probable cause, the law enforcement officer must be qualified to recognize the odor and the odor is "sufficiently distinctive to identify a forbidden substance." *Johnson v. United States*, 333 U.S. 10, 13, 92 L. Ed. 436, 440 (1948). Further, our Supreme Court held that the smell of marijuana gives officers the probable cause to search an automobile. *See State v. Greenwood*, 301 N.C. 705, 708, 273 S.E.2d 438, 441 (1981) ("[The Court of Appeals] further correctly concluded that the smell of marijuana gave the officer probable cause to search the automobile for the contraband drug."). But these cases were all decided before the legalization of industrial hemp, so they were based upon the distinctive odor and appearance of marijuana without any consideration of the delta-9 tetrahydrocannabinol concentration in the substance. With the legalization of industrial hemp, which according to the Memo smells and looks just like marijuana, Defendant argues it could not be "immediately apparent" to the officers that the substance in the car was marijuana, which is illegal, because it might be hemp.

In *Coolidge v. New Hampshire*, the United States Supreme Court described the plain view doctrine as applying when it is "immediately apparent" to the officers that the item is contraband or incriminating to the accused based upon their knowledge at the time of the search:

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, *the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges.*

403 U.S. 443, 466, 29 L. Ed. 2d 564, 583 (1971) (emphasis added) (citations omitted).

In *Texas v. Brown*, 460 U.S. 730, 741, 75 L. Ed. 2d 502, 513 (1983), the United States Supreme Court noted that courts have interpreted the words "immediately apparent" to mean that "the officer must be possessed of near certainty as to the seizable nature of the items." However, the Court then noted the "use of the phrase 'immediately apparent' was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the 'plain view' doctrine." *Id.* But the standard of certainty in this instance is no different than in other cases dealing with probable cause:

> As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief, that certain items may be contraband or stolen property or useful as evidence of a

- 15 -

crime; it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required. Moreover, our observation in *United States v. Cortez*, 449 U.S. 411, 418, (1981), regarding particularized suspicion, is equally applicable to the probable-cause requirement:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Id.* at 742, 75 L. Ed. 2d at 514 (citations omitted).

**D. Discussion**

Defendant argues that the law enforcement officers lacked probable cause to perform the warrantless search of his car because after the legalization of industrial hemp, the identification of marijuana by smell and plain view is not possible and probable cause cannot rely only upon the officers' beliefs based on sight and smell. Defendant points to the recent cases, such as *Parker*, raising arguments regarding an officer's inability to differentiate between marijuana, an illegal substance, and industrial hemp.

Here, the trial court's order relied upon the "totality of the circumstances" including the officers' beliefs that they smelled or saw marijuana. Defendant

contends that the trial court was required by the Memo to make a finding of fact that the officers could not have the ability to distinguish between marijuana and industrial hemp based on smell and appearance and therefore the trial court's conclusion cannot be supported as a matter of law. However, even if the trial court did not consider the Memo, the evidence from the officers was consistent with the Memo. At least two of the officers were aware that hemp and marijuana look and smell the same, and the other had experience only with marijuana.

As to the smell and appearance of marijuana in the car, Deputy Barron testified that he was familiar in his law enforcement career with marijuana, both smoked or raw, and it has "a very distinct smell. It stinks real bad." He testified he did not have any experience with hemp and had "never had . . . any contact with hemp" or training in detecting hemp. Corporal Kavanaugh testified that he asked Defendant "multiple times about the odor of marijuana, the smell, and the marijuana residue" and Defendant did not mention or "bring up the idea of hemp as being the cause or source of the odor of marijuana[.]" Deputy Schell testified that he assisted with the search of the car and the "raw marijuana [smell] was very present in the vehicle." He was aware at the time of the search that hemp and marijuana "have the same appearance and the same odor" and he was aware of the SBI Memo although he was not sure if he saw the Memo before or after this traffic stop. Corporal Kavanaugh also testified that there was no way to distinguish between hemp and marijuana in a "roadside" test but that would have to be done in a "scientific

laboratory." He was also aware that "an individual would have to have a license" to "transport hemp" even if it is being done legally, and Defendant did not "produce some license . . . in regards to hemp" and did not mention hemp or claim that he was licensed to grow it or transport it.

Therefore, there was evidence before the trial court that all three officers smelled and saw what they believed to be marijuana based upon their training and experience. The trial court's findings of fact adequately addressed this evidence as it found that all three officers had smelled and seen what they believed to be marijuana, and ultimately, they were correct. Corporal Kavanaugh asked Defendant about the marijuana smell, and he did not claim it was hemp or that he was legally entitled to possess hemp but instead claimed it was "from a cousin." The trial court did not make a specific finding that hemp and marijuana are indistinguishable by smell or appearance, but even without the Memo, the evidence was not conflicting on this fact. And based upon the trial court's comments during the hearing, it is apparent that the trial court was well aware of this fact. But this fact does not end the inquiry as Defendant claims it should.

First, the trial court noted that "the 800-pound elephant in the room nobody's talking about" was the fact that "unless you are licensed and under the supervision of the Industrial Hemp Commission, it's still illegal." As discussed above, industrial hemp could be legally possessed and transported under the law in 2020, but not all possession of industrial hemp was legal. *See generally* N.C. Gen. Stat. Ch. 106, art.

50e (2019). Defendant did not claim the substance was hemp or that he had a permit for producing or transporting hemp. In this regard, hemp could be compared to medications for which a prescription is required. It is legal for a person to possess certain controlled substances with a valid prescription, but it would be illegal for a person to possess the same controlled substance without a valid prescription. A law enforcement officer may have probable cause to seize a bottle of pills in plain view if he reasonably believes the pills to be contraband or illegally possessed. For example, in *State v. Crews*, our Supreme Court affirmed the trial court's denial of the defendant's motion to suppress a bottle of amphetamines seized by police. 286 N.C. 41, 46, 209 S.E.2d 462, 465 (1974). In *Crews*, officers were legally in the defendant's home to serve an arrest warrant. *Id*. at 45, 209 S.E.2d at 465. The officers saw in plain view

> a clear, brown-tinted bottle about five inches high and two to three inches in diameter located on the front of the shelf above the clothes that were hanging in the closet. The bottle had no writing or labels on it. It appeared to Officer Spillman to contain pills of various colors. Officer Spillman took [the defendant], and the bottle to the police station. The bottle was found to contain several hundred amphetamines.

*Id*. at 43, 209 S.E.2d at 463. The Supreme Court affirmed the trial court's denial of the motion to suppress, stating

> Officer Spillman was legally in the apartment. He testified that he had had some training in drug detection, that he had seen amphetamine pills before, and that the pills in the bottle looked like amphetamines. He further testified

> that the size of the bottle, the large number of pills, and the fact that there [was] no prescription or label on the bottle, all led him to believe that they were amphetamines.
>
> When an officer's presence at the scene is lawful, he may, without a warrant, seize evidence which is in plain sight and which he reasonably believes to be connected with the commission of a crime[.]

*Id*. at 45, 209 S.E.2d at 465 (citations and ellipses omitted).

Although the Industrial Hemp Act made the possession of industrial hemp legal under some circumstances, the Act still regulated hemp. The technical difference between marijuana and industrial hemp is the tetrahydrocannabinol ("THC") content, which must be less than 0.3 percent in industrial hemp. N.C. Gen. Stat. § 106-568.51(7) (2019). This technical difference between hemp and marijuana is crucial for purposes of sufficient evidence for conviction of an offense:

> In a criminal case, the State must prove every element of a criminal offense beyond a reasonable doubt. In the context of a controlled substance case, the burden is on the State to establish the identity of any alleged controlled substance that is the basis of the prosecution. The North Carolina Supreme Court held in *Ward* that unless the State establishes before the trial court that another method of identification is sufficient to establish the identity of the controlled substance beyond a reasonable doubt, some form of scientifically valid chemical analysis is required.

*State v. Carter*, 255 N.C. App. 104, 106-07, 803 S.E.2d 464, 466 (2017) (citations, quotation marks, and brackets omitted)

But the issue here is not whether the officers could identify the substance in Defendant's car as hemp or marijuana for purposes of proving the elements of a

criminal offense beyond a reasonable doubt. The issue for purposes of probable cause for the search is only whether the officer, based upon his training and experience, had reasonable basis to believe there was a "'practical, nontechnical' probability that incriminating evidence" would be found in the vehicle. *Brown*, 460 U.S. at 742, 75 L. Ed. 2d at 514 (citations omitted).

The requirement of the plain view doctrine at issue here is whether it may be "immediately apparent" that the item viewed – or smelled – is likely to be contraband. *Coolidge*, 403 U.S. at 466-67, 29 L. Ed. 2d at 583. "Our courts have defined the term 'immediately apparent' as being satisfied where the police have probable cause to believe that what they have come upon is evidence of criminal conduct." *State v. Hunter*, 286 N.C. App. 114, 117, 878 S.E.2d 676, 679 (2022) (citation omitted).

Even if industrial hemp and marijuana look and smell the same, the change in the legal status of industrial hemp does not substantially change the law on the plain view or plain smell doctrine as to marijuana. The issue is not whether the substance was marijuana or even whether the officer had a high degree of certainty that it was marijuana, but "whether the discovery under the circumstances would warrant a man of reasonable caution in believing that an offense has been committed or is in the process of being committed, and that the object is incriminating to the accused." *State v. Peck*, 54 N.C. App. 302, 307, 283 S.E.2d 383, 386 (1981) (citation omitted). In addition, even if the substance was hemp, the officer could still have probable cause based upon a reasonable belief that the hemp was illegally produced or possessed by

Defendant without a license, just as the officers in *Crews* believed the pills in the unmarked bottle to be illegally possessed. *See Crews*, 286 N.C. at 45, 209 S.E.2d at 465. Either way, the odor and sight of what the officers reasonably believed to be marijuana gave them probable cause for the search. Probable cause did not require their belief that the substance was illegal marijuana be "correct or more likely true than false. A 'practical, nontechnical' probability that incriminating evidence is involved is all that is required." *Brown*, 460 U.S. at 742, 75 L. Ed. 2d at 514; *see also Teague*, 286 N.C. App. at 179, 879 S.E.2d at 896; *State v. Johnson,* 288 N.C. App. 441, 457-58, 886 S.E.2d 620, 632 (2023) (explaining that although smell alone was not the basis of probable cause in the case, "The smell of marijuana alone supports a determination of probable cause, even if some use of industrial hemp products is legal under North Carolina law. This is because *only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause*" (emphasis in original) (citations and ellipses omitted)).

We conclude that despite the liberalization of laws regarding possession of industrial hemp, and even if marijuana and industrial hemp smell and look the same, the trial court did not err in concluding there was probable cause for the search of Defendant's vehicle based upon the officer's reasonable belief that the substance he smelled and saw in the vehicle was marijuana.

## IV.    Conclusion

We hold the trial court did not err in denying Defendant's motion to suppress the evidence seized after a lawful traffic stop and search based upon probable cause.

AFFIRMED.

Judges STADING and THOMPSON concur.